[No. 30774. Department One. April 21, 1949.]

JOHN A. JACK et al., *Respondents*, v. STANDARD MARINE INSURANCE COMPANY, LIMITED, *Appellant*.[1]

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Altha P. Curry*, for appellant.

*Riddell, Riddell & Hemphill*, for respondents.

BEALS, J.—This action was instituted by John A. Jack, doing business as J. A. Jack and Sons, upon a "contractor's equipment policy," whereby the defendant, Standard Marine Insurance Company, Limited, of Liverpool, England, insured plaintiff in the amount of seven thousand five hundred dollars against damage to a "D2 Bucyrus Diesel Shovel." By the second amended complaint, it was alleged that, during the term of the policy, the diesel shovel,

[1] Reported in 205 P. (2d) 351.

while being operated in connection with construction work in progress on land within the Duwamish waterway, which had been leased by the plaintiff, suffered damage within the protection afforded by the policy written by the defendant.

Loss under the policy was, by the terms thereof, payable to National Bank of Commerce (Central Branch) of Seattle, Washington, and the bank was joined as plaintiff in this action. We shall refer to Mr. Jack as though he were the sole plaintiff.

The policy insured against many different hazards, including

"(h) Collision, landslide, falling objects, upset or overturning of gasoline, steam, diesel or electrically operated machines if specifically itemized above (except as hereinafter provided);"

Paragraph IV and the first portion of paragraph V of the second amended complaint alleged as follows:

"That on the 7th day of February, 1947, while said policy was in full force and effect, the said D2 Bucyrus diesel shovel was being operated in connection with construction work in progress on property leased by the plaintiff, John A. Jack, in Seattle, Washington; that on said date, the operator of the shovel, while moving the machine forward, caused the crane thereof to be elevated at nearly the highest angle of elevation which said crane could obtain, and that at such time the clamshell bucket on the end of the crane was hanging directly at the end of the crane. That the operator in the furtherance of the construction work, caused the shovel to climb a very small incline, which resulted in the damage hereinafter described.

"That while the said operator was causing the shovel to climb said incline, the crane of the shovel, being elevated above the center of gravity thereof, suddenly fell backward and struck the top of the cab of the shovel. That said collision of the crane with the cab caused damage and loss as follows: . . ."

There followed five items of alleged damage aggregating, less fifty dollars deductible according to the terms of the policy, the sum of $3,675.06, for which amount, together with interest, plaintiff demanded judgment.

The defendant, by its answer, denied, on information and belief, the damage to the shovel, admitted its refusal to pay plaintiff's claim and, by way of an affirmative defense, alleged that any damage to the shovel and equipment was not directly caused by any of the perils insured against under the policy.

By the reply, the affirmative allegations of the answer were denied.

The action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in favor of plaintiff, followed by the entry of a judgment in plaintiff's favor in the amount of $2,869.84, together with costs.

From this judgment, defendant has appealed, assigning error upon the court's conclusions of law that the accident to the shovel constituted an upset and overturning within the meaning of the terms and conditions contained in the insurance policy, that the damage to the shovel was caused by an upset or overturning of the crane boom, and that respondent was entitled to recover judgment against appellant; upon the entry of judgment in respondent's favor; and, finally, upon the trial court's overruling of appellant's motion for judgment of dismissal notwithstanding the court's oral decision, and the denial of appellant's motion for a new trial.

From the court's findings, upon which appellant assigns no error, it appears

"That said diesel shovel moved on two parallel caterpillar treads, each of which was approximately twelve feet long. Mounted on the top of said caterpillar treads was a cab with the machinery to operate the shovel, and at the rear end of said cab, which rear end extended back beyond the rear end of the caterpillar treads for a distance of three feet, was a counterweight, weighing between five and ten ton. That said machine was equipped with a crane boom which projected from the front end of the machine. That this crane boom was fifty-five feet long; that suspended by cables from the tip of said crane boom was a clamshell bucket."

Concerning the accident which resulted in the damage to the shovel, the trial court found as follows:

"That on February 7, 1947, while said policy was in full force and effect, the said machine was being operated in connection with construction work being performed on property of the plaintiff, John A. Jack, in Seattle, Washington. That said machine was being moved on its treads forward over level ground. While so moving, the said crane boom was fixed at an elevation of approximately seventy-five degrees above the plane of the level earth. That the clamshell bucket was drawn up so that it hung suspended near the tip end of said crane boom and extended downwards only about as far as the top quarter or third of the crane boom. While the machine was in this condition, the operator attempted to propel it up an incline of approximately fifteen to twenty degrees, said incline being approximately eight feet long. When the front end of the machine was about one-half way up said incline, and when the crane boom approached vertical, the crane boom fell over backwards and the machine tipped backwards. The main weight of the machine came to rest upon the rear end of the cab, or counterweight, and upon the rear end of the caterpillar treads, the front end of the caterpillar treads being raised approximately three feet above the ground. That the crane boom came down on top of the cab of the shovel with its tip end resting on the ground out beyond the rear end of the cab."

The court then found the various items of damage to the shovel, and concluded that respondent was entitled to judgment, as above stated.

From photographs which were introduced in evidence, it appears that the fifty-five-foot crane boom (from the outer end of which was suspended a clamshell bucket), projecting from the front of the shovel, was made of open-work metal, controlled by a half-dozen support and guide cables, running from the outer tip of the boom to various portions of the shovel. When, as found by the trial court, the diesel shovel was, by its operator, caused to advance up a slight incline, the crane boom swung back toward or beyond a vertical position and, ceasing to be held in position by the guide and support cables, fell backwards, damaging the boom and the shovel in the amount for which

the trial court awarded judgment. After the accident, the front ends of the caterpillar treads were raised about three feet from the ground, and the five to ten ton counterweight at the rear of the shovel was imbedded in the soft ground.

From the evidence, the trial court concluded that the falling of the crane boom backwards "constituted an upset and also an overturning within the meaning of those words as used in the insurance policy," that the machine itself did not upset within the meaning of the policy, and, further, that the damage found "was sustained as a result of said upset or overturning of the crane boom."

A witness, an employee of the contractor, who was performing the work for respondent, testified that, at the time of the accident, the shovel was moving slowly forward, the boom being rather high in the air, and that, as the shovel started up the incline, the boom "overbalanced," and fell backward onto the shovel. After the boom fell, the shovel was resting on the counterbalance, the forward part of the shovel being in the air. The heavy counterbalance prevented the machine from "going on over." Other testimony to the same effect was introduced.

Appellant contends that, from the evidence, it should not be held that the damage to the shovel was caused by "collision, landslide, falling objects, upset or overturning of . . . diesel or electrically operated machines," and that the accident and resulting damage to the shovel does not fall within the terms and protection of the policy. In this connection, appellant argues that there can be no such thing as an upset or overturning of a machine "unless the mechanical part itself turns over or loses its equilibrium," and that, to bring a sustained damage within the language of the policy, it must appear that the entire mechanism, or at least that part which is mechanically operated, must upset or overturn, while the evidence shows no more than a partial upset or overturning.

There can be no doubt but that the shovel had lost its equilibrium. It could not turn over backwards because of the heavy counterbalance which became fixed in the soft

earth and the falling of the heavy boom, which, as an eye-witness testified, "came to rest draped over the machine."

Appellant relies upon the definition of the word "upset," as defined in Webster's New International Dictionary (2d ed.) 2800, as follows: "To overturn, overthrow, or capsize; as to *upset* a carriage." In the same dictionary, p. 1743, the word "overturn" is defined as "To turn over, esp. with or by the exertion of force; to throw from a basis or position; to overset; as, to *overturn* a carriage or a building."

It would seem that, for purposes of such an insurance policy as that before us, words contained in the policy should be construed in view of the purpose of the policy; namely, to protect the insured's property against loss by certain hazards. If a truck, moving along the road, starts to overturn on its side, but is prevented from reaching a horizontal position by a bank along the side of the road, a pile of lumber, a tree, or any other obstruction, and is damaged by the impact, a claim, under a policy insuring the truck against damage caused by overturning or upset, would arise in favor of the insured. Once a vehicle loses its equilibrium and the overturning process has commenced and proceeded beyond the power of those in charge of the vehicle to stop its progress, it would be unimportant whether the vehicle turned over and over, rolling down a hillside, or came to rest on a flat surface in an exactly horizontal position, or came to rest a short distance above the horizontal or at any other angle. It should be held that the vehicle had overturned or upset, within the meaning and intent of such a policy.

In the case at bar, the purpose of the shovel was the operation of the clamshell bucket suspended from the outer end of the boom. Due to the progress of the shovel up the incline, the boom lost its equilibrium, the heavily counterbalanced rear end of the shovel settled into the ground, and the boom overturned, falling backwards along the shovel.

We agree with counsel for appellant that, while definitions of words contained in standard dictionaries are not

controlling, they are generally accepted as the common meaning of the word; but, in construing a policy of insurance issued for a valuable consideration, the purpose of the contract should be considered.

■ Such a policy of insurance will be judicially construed in favor of the insured. The policy before us insures respondent against loss or damage directly caused by twelve different agencies. The coverage granted is very broad. The policy expressly does not insure against damage suffered as the result of six stated causes, and coverage is further limited to loss suffered within the limits of the city of Seattle.

In the case of *Guaranty Trust Co. v. Continental Life Ins. Co.*, 159 Wash. 683, 294 Pac. 585, this court reversed a judgment of the superior court, entered in favor of a defendant insurance company, notwithstanding the verdict of the jury in favor of the plaintiff, in an action on an insurance policy. In the course of the opinion, we said:

"There is another principle applying to contracts of insurance to the effect that, if they are so drawn as to require interpretation and fairly susceptible of two different conclusions, the one will be adopted most favorable to the insured; and will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms prepared by experts at the instance of the insurer, in the preparation of which the insured has no voice."

In support of the foregoing, decisions of this court and of other courts are cited. We are in entire accord with the above statement.

In the case of *Granger v. New Jersey Ins. Co.*, 108 Cal. App. 290, 291 Pac. 698, appears the following:

"In interpreting a contract, language is to be given the meaning which the one using it apprehended or should have apprehended that the other party would give to it. The common or normal meaning of language will be given to the words employed unless the circumstances show that in a particular case a special meaning should be attached to them. Then again, in construing a writing, all parts are to be considered with reference to each other, and in the case of a contract of insurance, the contract is to be inter-

preted in the light of its nature in view of its purpose as such, and with a considerable degree of liberality in favor of the insured and against the insurer by reason of it having framed the contract. A risk fairly within contemplation is not to be avoided by any nice distinction or artificial refinement in the use of words."

Appellant relies upon the case of *Orlando v. Manhattan Fire & Marine Ins. Co.,* 266 App. Div. 319, 42 N. Y. S. (2d) 228, affirmed in 293 N. Y. 907, 60 N. E. (2d) 34. In the case cited, it appeared that an excavating shovel was being transported on a trailer, to the deck of which a flap had been attached on each side to increase its width. During the transportation, one flap broke, causing the shovel to fall from the trailer to the ground. The trailer at all times retained its upright position. The owner of the truck and trailer was protected by a policy insuring against damage caused by "overturning of conveyances," and brought suit against the insurer.

The court held that the damage caused by the giving way of the flap was not within the protection of the policy. In the course of the opinion, the court said:

"The equilibrium of the conveyance (the trailer) was not disturbed in any way so that it could not be said to have overturned, the accident being due solely to the collapse or breakdown of the flap on the edge of the trailer platform."

The facts in the case cited differ materially from those in the case at bar.

The supreme court of South Carolina, in the case of *Moore v. Western Assurance Co. of Toronto,* 186 S. C. 260, 195 S. E. 558, considered a policy of insurance which protected the insured, a carrier, against liability to others for damage to goods while being transported by the insured. The policy covered damage suffered by "overturning of the motor truck and/or trailer."

While the insured truck was transporting a load of fruit along a highway, the right-hand wheels of the truck left the pavement and, the shoulder being soft, the wheels sank to the axles, causing the load of fruit to shift, break-

ing the sideboards of the truck, and throwing a portion of the fruit to the ground, with resulting damage. A judgment was rendered in favor of the insured and, on appeal, the supreme court affirmed the judgment, directly quoting with approval from the trial court's ruling:

" 'As to the overturning, the degree of overturning has nothing to do with it. A slight overturning is as much an overturning as a complete overturning.' "

In the case of *Ingalls, Inc. v. Hartford Fire Ins. Co.*, 137 Cal. App. 741, 31 P. (2d) 414, the California district court of appeals reversed a judgment of the superior court in favor of the defendant in an action by the insured on a policy protecting the insured, a trucking company, against damage to merchandise during transportation caused by "overturning of the truck." The policy also covered trailers. It appeared that, during transportation by the insured of a load of flume iron, the right wheels of the trailer left the pavement and sank two or three feet into the soft dirt, with the result that the load of iron slipped from the trailer and suffered damage. After the load had slipped, the trailer was pulled back onto the pavement undamaged.

In the course of the opinion, the appellate court said:

"Having in mind the purpose of the policy, the general circumstances and the other provisions of the policy, as well as the clause here in question, and under the rules above referred to, we are of the opinion that there was an overturning of this vehicle within the meaning of the policy. It must be admitted that the vehicle partially overturned, causing the damage in question, and the language used in the policy is broad enough to cover both a partial and a complete overturning of the vehicle. In ordinary parlance, anything has been overturned when it has been sufficiently tipped over to spill its contents and, in the absence of anything in the policy indicating a different meaning, the ordinary sense of the words used should not 'by any nice distinction or artificial refinement' be changed in order to avoid a risk which seems to have been fairly within the contemplation of the policy."

The word "equilibrium" has been defined as follows:

"The state of balance between opposing forces or actions, either *static* as in the case of a body acted on by forces

whose resultant is zero, . . . " Webster's New International Dictionary (2d ed.) 864.

"A state of balance produced by the counteraction of two or more forces; equipoise. . . . The state of a body so acted upon by several counteracting forces that it has no tendency to move." Funk and Wagnalls, New Standard Dictionary 842.

■ Obviously, the shovel and boom lost equilibrium in the course of the accident which resulted in the damage for which respondent seeks recovery under the policy. The evidence shows that the shovel suffered an upset or overturning, resulting in damage to the insured machine.

The trial court did not err in its conclusions of law, upon which appellant assigns error, and in entering the judgment appealed from.

The judgment is accordingly affirmed.

JEFFERS, C. J., STEINERT, MALLERY, and HILL, JJ., concur.