Vernon WARD, Plaintiff-Appellant,

v.

Claud O. GREGORY, Defendant
(National Indemnity Company,
Garnishee-Respondent).

No. 7594.

Springfield Court of Appeals.

Missouri.

Oct. 1, 1957.

---

J. W. Grossenheider, Lebanon, for appellant.

Meredith B. Turner, Kenneth H. Reid, Steward, Reid & Turner, Springfield, for respondent.

McDOWELL, Presiding Judge.

This is a garnishment proceeding. The appeal is from a judgment rendered in the Circuit Court of Dallas County, Missouri, in favor of garnishee, National Indemnity Company. The proceeding was in aid of an execution by Vernon Ward against defendant, Claud O. Gregory, on a judgment obtained against Gregory for injuries growing out of an automobile accident.

The issues are raised by appellant's first amended denial to garnishee's answer and the reply to such denial.

Plaintiff's first amended denial to garnishee's answer states:

"That prior to the institution of this action and prior to the accident over which this action was instituted the said Claude O. Gregory in consideration of a premium in the amount of $39.00 paid to the garnishee received from the garnishee its written obligation to insure the said Claud O. Gregory against any liability occasioned by his negligent operation of his 1950 Ford automobile; a copy of said written agreement is annexed hereto and is marked plaintiff's Exhibit 'B' and is incorporated herein by reference.

"That at all times herein mentioned the National Indemnity Company was obligated under its written agreement aforementioned and is now obligated to pay to this plaintiff the sum of $2,000.00 plus interest thereon at the rate of 6 per cent per annum and all the costs expended by the plaintiff in the aforementioned law suit."

The answer of garnishee was a denial that it was obligated under any policy of insurance or under any agreement to pay any sum of money for which Claud O. Gregory might have become legally liable because of injuries sustained by Vernon Ward as the result of negligence of Gregory in the operation of his Ford automobile.

The answer pleaded that exhibit (B) attached to plaintiff's amended denial to garnishee's answer was issued in behalf of garnishee by its agent, but that said exhibit provided for a trip coverage between the cities of Issaquah, Washington, and Lebanon, Missouri, and provides that coverage ceases "immediately upon arrival of unit described at its destination"; that said unit had arrived at Lebanon, Missouri, and had completed the trip prior to the date of accident for which plaintiff instituted the proceedings against Gregory and prior to the accident and that no coverage was in force and effect under the terms of exhibit (B) or any contract, policy of insurance or agreement of any kind at the time of the accident for which plaintiff secured judgment against Gregory.

Briefly stated, the facts show that Claud O. Gregory, a Sergeant in the U. S. Army, whose home was in Lebanon, Missouri, arrived in the state of Washington from overseas June 26, 1955; that he purchased the automobile described in the binder in evidence, as plaintiff's exhibit (B). On July 6, 1955, Gregory called at the Washington State Bank in Issaquah for the purpose of purchasing liability insurance on his newly acquired car, which he intended to drive from Issaquah to Lebanon; that he talked to one, Mr. Sherrill, who was in charge of the insurance department of the bank. Gregory testified:

"Q. What type of insurance did you tell him you wanted, Claud? A. I wanted term insurance, about six months or a year.

"Q. Did he tell you whether or not he could give you that type of insurance? A. Yes, sir, he said that they could not write it up for a soldier that was leaving the State, term insurance, for a six months period or a year.

"Q. Go ahead, Claud; * * *? A. Well, he said he could sell me en route insurance, and I stated I didn't want en route insurance, for the simple reason that I hadn't lived here for a right smart while, I had been in the Service, and I would have to find a company that would cover me after I got back here, and being as there was no company there that would cover me I didn't know whether I could get one after I got there, and so I wanted the term insurance, for thirty days if I could get it, but he said he could only cover me for fifteen.

"Q. Did you then agree that that was the type of insurance that you would purchase that day? A. Yes, sir, I did."

Witness testified that Sherrill figured out the premium and told him it would be $39 and he received a receipt from the bank. (The receipt is in evidence as plaintiff's exhibit 2.) The binder was mailed to Gregory's home in Lebanon, which he received some three or four days after the return and before the collision. Gregory stated that when he purchased the insurance it was his understanding that the coverage was to be from the 6th to the 21st of July.

On cross-examination Gregory stated that he could not recall whether Sherrill placed a telephone call while he was in the bank. He testified:

"Q. Did he not tell you that he was going to have to call Seattle, .

Washington, with reference to this binder that was issued? A. He said they would call in and have my binder mailed to me; that is the reason I had him to write this receipt, so I would have some evidence that I had some insurance while I was traveling.

"Q. He told you, didn't he, that his company couldn't issue such a binder as you had discussed with him, and he would have to get it in Seattle, or something to that effect? A. I think he said he could not issue me a binder for six months or a year, but he said he could give me a binder for an en route or this fifteen day policy that you sold me; that was the understanding I had with him.

"Q. He told you that they could issue one for an en route? A. Yes, sir, or for a short period of time.

"Q. And did you tell him where you wanted to go, and so on? A. Yes, sir; he asked me where did I want it, and I told him to Lebanon, and I asked him if that would cover the surrounding area, that my folks lived out in the country from there, and he said that it would take care of the surrounding vicinity, as long as I was in that vicinity.

"Q. Did you tell him when you planned to leave Issaquah for Lebanon? A. Yes, sir; I told him that day."

Witness stated he did not know the distance from Issaquah to Lebanon but that it was something like 2,000 miles; that he drove directly to Lebanon and arrived there July 10th; that he made no attempt after arrival to purchase other insurance; that he was in Lebanon some six days before the accident in which Vernon Ward was injured and for which injuries the $2,000 judgment was secured against him.

Estes D. Sherrill testified that he was Assistant Manager of the Washington State Bank in July, 1955, and Manager of the Insurance business; that in this position he acted as broker for customers of the bank and others in securing automobile insurance. He testified he had no authority to bind the National Indemnity Company with insurance coverage or to sign any policy or binder for that company.

His testimony was that he remembered Gregory calling at the bank July 6, 1955, and requesting insurance; that Gregory came into the bank and requested coverage for his 1950 Ford for 5/10/5 Public liability and property damage, $100 deductible, fire and theft insurance; that he indicated to Gregory that he could not place the insurance in one of the bank's companies. He testified that they called the Northwest General Agency and asked them to issue a trip policy while Gregory was en route to Lebanon, Missouri; that the amount of the premium for the coverage was determined by the Northwest General Agency. He said it was his intention to obtain a trip coverage policy from Issaquah to Lebanon.

Lucille E. Succo testified that in July, 1955, she was employed as Assistant Underwriter by Northwest General Agency; that her duties were underwriting policies of insurance; that ordinarily binder policies were written by others but that she occasionally prepared them. She stated all binders were prepared under her supervision and she signed most of them.

Witness said she could not recall clearly the call from Washington State Bank made on July 6, 1955, regarding coverage insurance for a soldier. She examined her hand-written notes, a photostatic copy of which is attached to her deposition, and then said that the notes refreshed her memory as to what occurred when the binder was written. She testified that the binder was to cover a trip between Issaquah, Washington, and Lebanon, Missouri. She gave this answer: "Yes. The ordinary procedure then would be to type up a binder and allow them fifteen days for that trip, but it *would definitely only from city to city,* or place to place, as shown." She stated Gregory was given fifteen days to make the trip and if it took less time the coverage would cease upon arrival at his destination and that was the intention the company had in writing the binder and that Mr. Sherrill had in ordering it. She gave this answer: "Yes. I am certain it would have been understood. It was explained to him what coverage we could give the soldier."

She testified that the premium on the binder was figured on a trip basis; that a copy was sent to the agent (in this case the Washington State Bank), and a copy retained in their files. She stated no broker ordering insurance coverage had authority to sign the policy; that all policies for the National Indemnity Company were signed in the Northwest General Agency. She said it was difficult to obtain insurance for soldiers and the Northwest General Agency was fortunate to offer them trip coverage where they were going home. She said the "fifteen days" in the binder was solely to limit the time in which Sergeant Gregory was to make the trip from Issaquah to Lebanon; that that was the very maximum time designated for the trip.

Both briefs of appellant and respondent state that the contract of insurance was obtained in the state of Washington and that the rights of the parties must be determined by the laws of that state.

Appellant's assignment of error is that the trial court erred in finding the issues for garnishee because under the law and the evidence the verdict should be for appellant and the judgment of the court is against the weight of the credible evidence under the law.

■ The record discloses that appellant never requested the trial court to make findings of fact upon which he based his judgment, as provided in section 510.310, RSMo

1949, V.A.M.S. Therefore, the judgment must be sustained if it can be justified under the evidence. The record does not show upon what facts the trial court based its judgment. The court merely found in favor of garnishee and that at the time it was summoned as garnishee, it was not obligated under its insurance contract, agreement or binder to pay any sum of money for which Claud O. Gregory had become legally obligated to pay because of judgment entered in favor of plaintiff, Vernon Ward, against said Gregory.

Section 510.310, subd. 2 RSMo 1949, V.A.M.S., provides: " * * * All fact issues upon which no specific findings are made shall be deemed found in accordance with the result reached." Townsend v. Lawrence, Mo.App., 267 S.W.2d 489, 491(2); Tillery v. Crook, Mo.App., 297 S.W.2d 9, 12(4).

It is appellant's contention that under the terms of the binder policy in question it was the intention of the parties that the insurance coverage was to extend from July 6, 1955, to July 21, 1955.

It is respondent's contention that it was the intention of the parties that the binder was an "en route" coverage between Issaquah, Washington, and Lebanon, Missouri, and that under the admitted facts in the case the coverage was terminated on July 10th, at the time insured arrived in Lebanon.

The sole question presented in this case is whether or not the binder insurance contract, issued by garnishee to Gregory, was in force and effect on July 16, 1955, at the time of an accident in which plaintiff was injured and for which injuries he obtained a $2,000 judgment against Gregory.

■ The primary factor to be considered in determining the meaning of a written contract is the intention of the parties and that intention largely is to be ascertained from the language employed by them. Grand Lodge of Scandinavian Fraternity of America, Dist. No. 7 v. United States Fidelity & Guaranty Co., 2 Wash.2d 561, 98 P.2d 971; Boeing Airplane Co. v. Firemen's Fund Indemnity Co., 44 Wash.2d 488, 268 P.2d 654, 658(1, 2), 45 A.L.R.2d 984.

■ Where the terms of a contract, taken as a whole, are plain and unambiguous, the meaning of the contract is to be deduced from its language alone, and it is unnecessary for the court to resort to any aids of construction. Bellingham Securities Syndicate v. Bellingham Coal Mines, 13 Wash.2d 370, 125 P.2d 668; Finch v. King Solomon Lodge No. 60, 40 Wash.2d 440, 243 P.2d 645.

In Jeffries v. General Casualty Company of America, 46 Wash.2d 543, 283 P.2d 128, 130(1-4), the law is stated:

"Insurance contracts should be construed in accordance with the general rules applicable to other contracts. Goodwin v. Northwestern Mutual Life Insurance Co., 196 Wash. 391, 83 P.2d 231. The purpose of the insurance contract should be considered. If the contract is fairly susceptible of two different conclusions, the one which is most favorable to the assured will be adopted. Jack v. Standard Marine Insurance Company, 33 Wash.2d 265, 205 P.2d 351, 8 A.L.R.2d 1426. Where a clause in an insurance policy is ambiguous, the meaning and construction most favorable to the insured must be applied, even though the insurer may have intended another meaning. Kane v. Order of United Commercial Travelers, 3 Wash.2d 355, 100 P.2d 1036. But the rule that an insurance policy must be construed strictly against the company and liberally in favor of those afforded protection by it, has no application where the provisions of the policy are neither ambiguous nor difficult of comprehension. Handley v. Oakley, 10 Wash.2d 396, 116 P.2d 833.

And a court is not at liberty to revise a contract under the theory of constru-

ing it. Evans v. Metropolitan Life Insurance Co., 26 Wash.2d 594, 174 P.2d 961." Christensen v. Sterling Insurance Co., 46 Wash.2d 713, 284 P.2d 287.

The rule requiring construction of an insurance policy favorable to the insured in cases of ambiguity does not justify a strained interpretation of the language of the contract in order to create an ambiguity where none exists. It is a well known rule of construction of insurance contracts that when a possible ambiguity exists, seeming contradictions must be harmonized away if that course be reasonably possible. Mathews v. Modern Woodmen of America, 236 Mo. 326, 139 S.W. 151, Ann. Cas.1912D, 483; World Fire & Marine Ins. Co. v. Carolina Mills Dist. Co., 8 Cir., 169 F.2d 826, 829, 4 A.L.R.2d 523.

The issues in the instant case must be determined by the construction of the binder in evidence.

The binder, with the printed portions being set forth in regular type and the typewritten portions italicized, is as follows:

"National Indemnity Company Binder"

"The National Indemnity Company of Omaha, Nebr., this day binds for *Fifteen (15) Days Sgt. Claude O. Gregory, 530 McPhell St., Lebanon, Missouri,* the following coverages *$100.00 deductible Fire, Theft, and Collision Value $500.00 $5/100,000 Bodily Injury Liability and $5,000 Property Damage* on property described as *1950 Ford 6 cyl. 2 Door Sedan M No. HODA 193498* for a term not to exceed *15 (fifteen) days* from date and hour of this binder, subject to all the terms and conditions of its policy.

"If trip coverage is bound, coverage is provided only between the cities of *Issaquah, Washington* and *Lebanon, Missouri,* and coverage is to cease immediately upon arrival of unit described at its destination.

"Dated *July 6, 1955* Time *1:25* P.M. Expires: *July 21, 1955,* at *Seattle, Washington.*

"*7/6/55* legs

"National Indemnity Company, Northwest General Agency, Inc., by Richard F. Nowok,

(agent)   LS"

We will first determine whether the provisions of the binder policy are ambiguous or difficult of comprehension for, if there is no ambiguity contained in the provisions of such insurance contract, its meaning must be determined from the wording of the instrument and the court would not be warranted in revising the contract under the theory of construing it. Evans v. Metropolitan Life Insurance Co., 26 Wash.2d 594, 174 P.2d 961; Boeing Airplane Co. v. Firemen's Fund Indemnity Co., supra, 268 P.2d at page 658(3, 4).

In Miller v. Penn Mut. Life Ins. Co. of Philadelphia, 189 Wash. 269, 64 P.2d 1050, 1053(1, 2), the law is stated:

"The rule that the contract will be construed most favorably to the insured will be applied only when there is an unexplained ambiguity in the language of the contract. It is well settled that all parts of an insurance policy must, if possible, be harmonized and given effect. Aetna Insurance Co. v. Sacramento Stockton S. S. Co., 9 Cir., 273 F. 55; 2 Cooley's Briefs on Insurance (2d Ed.) 999.

"The liability of respondent is fixed by the terms of the contract, and its terms, if plain and free from ambiguity, must control. Puget Sound Improvement Co. v. Frankfort Marine, Accident & Plate Glass Insurance Co., 52 Wash. 124, 100 P. 190.

" * * * An insurance company has the right to determine for itself whom it will insure and what interest it will insure and to provide that any change in such interest without its con—

sent will work a forfeiture of the policy. * * *"

In Appleman, Insurance Law & Practice, Vol. 13, Sec. 7522, p. 248, the law is stated:

"In construing an insurance policy or certificate, all parts, both printed and written, should be given effect, if possible. In construing insurance contracts, the court must take the policy as it finds it, and where it is in printed form with written parts introduced into it, must take the whole together, both written and printed. Wherever possible, the courts will harmonize such clauses if they can be reconciled by any reasonable construction, since it cannot be assumed that the parties intended to insert inconsistent provisions.

"Of course, printed parts of a policy may be modified by written endorsement. And the general rule is that while written and printed portions of a policy will be reconciled, if possible, if they are definitely repugnant, the written clauses will be given effect over the printed. * * *"

In Couch on Insurance, Vol. 8, § 2176, p. 7037, the law is stated:

" * * * In this, as in the construction of other contracts, the general rule is that the written words are to have greater force than the printed, since the written are the words chosen by the parties as evidence of a special contract to express their meaning in the particular case; this rule is applicable when the written and the printed parts cannot be reconciled."

An examination of the binder in the instant case discloses that the contract consists of both printed and written matter. In other words, it clearly shows that the company used a blank form and expressed the meaning of the parties by filling in blanks.

Considering the binder as a whole and giving the terms of the policy their usual and ordinary meaning, it provides that garnishee binds itself by the coverages described in said policy for fifteen days from July 6, 1955, or for a term not to exceed fifteen days from said date, subject to the terms and conditions of the policy which provide that "if trip coverage is bound, coverage is provided only between the cities of Issaquah, Washington and Lebanon, Missouri, and coverage is to cease immediately upon arrival of unit described at its destination." We think the meaning is clear from the express terms of the contract. If it was the intention of the parties that the coverage was to be fifteen days from July 6, 1955, to July 21, 1955, as contended by appellant, why did the parties insert, after the printed words, "for a term not to exceed 15 (fifteen) days from date and hour of this binder", and then why would they have filled in the blanks which provide "if trip coverage is bound, coverage is provided only between the cities of Issaquah, Washington and Lebanon, Missouri" ? In interpreting the contract we must give consideration to all of the terms of the contract and if the terms can be harmonized it is the duty of this court to consider only the contract in determining the intention of the parties. When we read the provision of the contract which provides that the coverage *shall not exceed fifteen days* and the provision that the coverage provided *shall be only between the cities of Issaquah, Washington, and Lebanon, Missouri,* we can reach no other conclusion that this was an "en route" policy and that the intention of the parties was that the coverage provided should extend only until the car reached its destination.

We think the trial court's judgment should be sustained on the theory that the binder policy was unambiguous and that from a consideration of the whole contract giving the terms used their plain and ordinary meaning, it was the intention of the parties that the coverage should be an "en route" coverage and that such coverage terminated July 10, 1955.

Judgment affirmed.

STONE and RUARK, JJ., concur.