GRIMH, Respondent, v. WESTERN FIRE INSURANCE COMPANY, Appellant.

*September 10—October 7, 1958.*

For the appellant there was a brief by *William A. Cameron* and *Howard W. Cameron,* both of Rice Lake, and oral argument by *Howard W. Cameron.*

For the respondent there was a brief and oral argument by *Rodney Lee Young* of Ladysmith.

FAIRCHILD, J. Defendant contends that the casualty to plaintiff's tractor was not an upset or overturn, considering

that those terms are defined in its insurance policy by the phrase: "(Meaning a complete overbalancing of . . . machines)."

Dictionary definitions of "upset" and "overturn" are not very helpful. Webster's New International Dictionary (2d ed.), defines each of those terms by reference to the other. The verb "overbalance" is defined as "To cause to lose balance or equilibrium." The noun "equilibrium" is defined, in so far as material, as *"Phys. Science.* A state of balance between opposing forces or actions, either *static,* as in the case of a body acted on by forces whose resultant is zero, or *dynamic,* as in a reversible chemical reaction when the velocities in both directions are equal. The equilibrium of a body is said to be *stable* if, on being slightly displaced, it tends to return to its original position; . . ."

Thus by reference to the dictionary meaning of "overbalancing" we may paraphrase this provision of the policy as covering an event in which the machines tip far enough so that they lose their equilibrium and their tendency to return to their normal position. If the tractor, although tipped at an angle, would tend, except for the mud and solid ground around it, to return to its normal operating position upon its treads upon a horizontal plane, this policy would not cover the event. If it tipped far enough so that it would tend, except for the mud and solid ground around it, to tip farther away from its normal operating position and come to rest on its side or in some other abnormal position upon a horizontal plane, there has been a complete overbalancing or upset or overturn as defined in this policy.

Our attention has not been called to any decision construing the same language as appears in the policy before us. Dictum in one of our own decisions indicates that the sinking of one side of a vehicle into mud can be an upset if the process goes far enough. In *Bell v. American Ins. Co.* (1921), 173 Wis. 533, 534, 181 N. W. 733, the policy covered damage by

collision but contained no provision for upset or overturn. The court described what happened as: "One side of the car gradually settled into the ground and the car tipped over." The court decided that this was not a collision and therefore the policy did not cover, but said (p. 536), "The incident causing the damage to the automobile here in question is spoken of in common parlance as an upset or tip-over. If it were the purpose to insure against damage resulting from such an incident, why should not such words, or words of similar import, have been used?"

Other courts have stated a test similar to the one we have stated above, although they were considering policies insuring against "upset" or "overturn" but not containing the defining phrase set forth in the policy now before us.

In *Jack v. Standard Marine Ins. Co.* (1949), 33 Wash. (2d) 265, 205 Pac. (2d) 351, 8 A. L. R. (2d) 1426, recovery was allowed under a policy insuring against "upset" or "overturning." The machine involved was a Diesel shovel on caterpillar treads with a crane boom projecting from the front and a counterweight at the rear. While moving forward, with the crane boom at an elevation of 75 degrees, the machine was propelled up an incline of 15 to 20 degrees. When the crane boom approached the vertical, the machine tipped backward and rested on the counterweight with the front ends of the treads being raised approximately three feet above the ground. The crane boom fell backward across the top of the cab.

In concluding that the policy covered this event, the Washington court said (p. 270):

"It would seem that, for purposes of such an insurance policy as that before us, words contained in the policy should be construed in view of the purpose of the policy; namely, to protect the insured's property against loss by certain hazards. If a truck, moving along the road, starts to overturn on its side, but is prevented from reaching a horizontal position by a bank along the side of the road, a pile of lumber, a tree,

or any other obstruction, and is damaged by the impact, a claim, under a policy insuring the truck against damage caused by overturning or upset, would arise in favor of the insured. Once a vehicle loses its equilibrium and the overturning process has commenced and proceeded beyond the power of those in charge of the vehicle to stop its progress, it would be unimportant whether the vehicle turned over and over, rolling down a hillside, or came to rest on a flat surface in an exactly horizontal position, or came to rest a short distance above the horizontal or at any other angle. It should be held that the vehicle had overturned or upset, within the meaning and intent of such a policy."

The *Jack* decision and others are cited in 5A Am. Jur., Automobile Insurance, p. 55, sec. 54, in support of a statement that, "A complete overturning of the vehicle is not necessary to come within coverage against 'upset' or 'overturning.' The real test is whether or not the vehicle preserved its equilibrium."

The motion for directed verdict made by both parties without reservation constituted a stipulation waiving a jury trial and submitting the entire case to the court for decision. Sec. 270.26, Stats. The trial court did not make written findings as required by sec. 270.33.

"While the lack of findings is not necessarily reversible error, *Duncan v. Duncan,* 111 Wis. 75, 86 N. W. 562, this court may reverse for want of appropriate findings, *Jansen v. Huerth,* 143 Wis. 363, 127 N. W. 945. This court may affirm this judgment if 'a perusal of the evidence shows that the court reached a result which the evidence would sustain if specifically found.' *Schmoldt v. Loper,* 174 Wis. 152, 153, 182 N. W. 728." *Interstate Finance Corp. v. Dunphy* (1941), 239 Wis. 98, 101, 300 N. W. 750.

Had the trial court made a finding that the plaintiff's machine had tipped far enough to have lost its equilibrium in its normal operating position, such finding would have supported the judgment. In our view the testimony summarized

in the foregoing statement of facts could properly be interpreted as showing that the tractor was far enough out of plumb so that it had lost equilibrium and that it was held from tipping further by mud and solid ground giving, what might be called, lateral support to various portions of the machine. Since the testimony could be interpreted so as to sustain a finding which would support the judgment, we affirm.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.

HALLOWS, J. (*dissenting*). The majority opinion ignores the word "complete" in modifying "overbalance" in the definitive clause of the policy. In my view of the facts, the 10-ton tractor in its normal use nosed into a sinkhole and settled to its right in the soft mud. At no time did it tip over or overturn but came to rest at an angle with part of its left side on firm ground. At the most, it was mired in the mud of the slough at an angle and could not be removed by its own power. Miring is a common occurrence with heavy construction equipment.

The policy involved is an inland marine policy with a contractor's equipment coverage form attached. The coverage granted in this type of policy is special and very narrow and is not to be confused with the comprehensive coverage common in automobile policies. The policy insured only against limited and stated hazards such as (a) fire and lightning, (b) explosion, (c) cyclone, tornado, and flood, (d) collision, upset, or overturn, (e) collapse of bridges, collision, derailment, and overturn of any carrying conveyance, and (f) certain marine perils. Each of these specific hazards was qualified by limiting language. After the words "collision, upset, or overturn" the following language appears in the policy "(meaning a complete overbalancing of gasoline, oil, steam, or electrically operated machines)."

In construing the language of an insurance policy its purpose should be considered and the terms be given their ordinary and common understanding unless modified or defined in the policy. In this policy the hazard is defined as complete overbalancing. The test laid down in the majority opinion of what constitutes the hazard insured against is unrealistic and unreasonable and does violence to the defined terms and purpose of the policy. Whether the tractor would tend to return to its normal position or tend to completely overturn except for the mud or ground around it is not the test. The tractor tended to do neither; it was contented to remain mired in the mud. This was the type of situation sought to be eliminated in this policy by the limiting words "complete overbalancing."

I am authorized to state that Mr. Justice CURRIE concurs in this dissent.