165 So.2d 724

**AMERICAN LIBERTY INSURANCE COMPANY**

**v.**

**William T. MOORE.**

**6 Div. 9.**

Supreme Court of Alabama.

June 18, 1964.

Porterfield & Scholl, Birmingham, for appellant.

E. D. McDuffie and Norma Holcombe, Tuscaloosa, for appellee.

HARWOOD, Justice

This is an appeal from a verdict and judgment for the plaintiff, damages being assessed at $1350.00.

The complaint claimed damages allegedly resulting from an upset of plaintiff's trailer, the defendant having issued a combination insurance policy to the plaintiff covering the trailer in question.

The policy contained the following provision:

"Coverage E—Collision or Upset: To pay for direct and accidental loss of or damage to the automobile, hereinafter called loss, caused by collision of the automobile with another object, or by upset of the automobile, but only for the amount of such loss in excess of the deductible amount, if any, stated in the declarations as applicable hereto."

The most material question presented on this review is whether the facts shown by the evidence below constitute an "upset" of the trailer.

There is no serious contradiction in the evidence presented by the respective parties below.

It tends to show that when wood chips are hauled in trailers to the mill of the Gulf States Paper Corporation near Tuscaloosa, these trailers are backed between two upright steel beams, the specially constructed rear bumpers on the trailers are fitted into a slot on a ramp, the dolly wheels on the trailer are lowered, and the tractor is then disconnected and driven off. At this point the paper company takes over the unloading of the chips from the trailer.

The unloading is done by raising the front end of the trailer sufficiently high for gravity to cause the chips to slide out of the trailer.

The evidence further shows that before permitting trailers to haul chips to their mill, the paper company requires that they be fitted with the above mentioned special bumpers. A U bolt is also welded to the front of the trailer to receive the hook used in hoisting the front end of the trailer. The trailers are then inspected and not permitted to haul chips to the mill unless approved by the paper mill.

Elby Wallace, an employee of the plaintiff, placed the plaintiff's chip laden trailer in position at the hoist. He uncoupled the tractor and drove it off 50 to 100 feet.

When he next observed the trailer the front end had been raised by the hoist to an angle of about 45°, or about "half way up," and the hoist was quivering. The hoist had been stopped. The trailer was tilted over on one side at the fore part, maybe 20°, and some of the chips had spilled out.

The hoist operator called the foreman, and Wallace put in a call to his employer.

One side of the trailer was "bowed out" from the middle door to the front. The rear wheels were on the ground, and the rear bumper was secured in the slot.

The front end of the trailer was lowered, the tractor was attached, and the rig was driven away.

As to the damage to the trailer, Wallace testified that the twisting of the trailer body was at the front end, "and the breaking was at the front end where the steel runners coming across, there was about five of them runners broken, and broken in the side, and also the frame that goes from the front to the rear was cracked too."

Grady Ernest, the hoist operator testified that the hoist was in good working order. When he raised the front of the trailer about a foot and a half he noticed that the trailer was twisting, with one side higher than the other. The twisted side was at an angle of 30° at the top. (This we take to mean at the lifted front end.) He notified a foreman, who told him not to raise the trailer any higher. "I let it down on the platform and disconnected it and Mr. Wallace pulled the truck in and coupled it up to move it." The trailer was returned to its original position on the ground. When the trailer was attached to the tractor, looking from the front to the back, he would say it was an inch and a half higher on one side than the other.

Mr. Ernest testified that on occasions he has seen trailers turn over on their sides while being hoisted, and once they start to turn over there is nothing the hoist operator can do to prevent it. If he had raised this trailer higher it would have turned over.

"Upset" is defined in Webster's New International Dictionary as, "To overturn, overthrow, or overset, as to upset a carriage."

"Overturn" in the same work is defined as, "To turn over, to upset, or to capsize."

Courts have been called upon to interpret the meaning of "upset," or "overturn," as they have appeared in insuring provisions similar to the one now under consideration. "Upset" and "overturn" have been treated as having synonymous meanings, and properly we think. See cases discussed in annotation beginning on page 1433 of 8 A.L. R.2d.

The courts have not accorded to the words "upset" or "overturn" the literal meaning to be found in the dictionary definitions, but the rule as crystalized in the cases is, as stated in 5A Am.Jur., Automobile Insurance, Sec. 54, "Whether or not the vehicle preserved its equilibrium."

In the leading case of Jack v. Standard Marine Ins. Co., 33 Wash.2d 265, 205 P.2d 351, 8 A.L.R.2d 1426, the following observations are made as to the construction to be accorded "upset" as it appears in insurance provisions similar to the one now under consideration:

"If a truck, moving along the road, starts to overturn on its side, but is prevented from reaching a horizontal position by a bank along the side of the road, a pile of lumber, a tree, or any other obstruction, and is damaged by the impact, a claim, under a policy insuring the truck against damage caused by overturning or upset, would arise in favor of the insured. *Once a vehicle loses its equilibrium and the overturning process has commenced and proceeded beyond the power of those in charge of the vehicle to stop its progress, it would be unimportant whether the vehicle turned over and over, rolling down a hillside, or came to rest on a flat surface in an exactly horizontal position, or came to rest a short distance above the horizontal or at any other angle.* It should be held that the vehicle had overturned or upset, within the meaning and intent of such a policy." (Emphasis ours.)

In Chemstrand Corp. v. Maryland Casualty Co., 266 Ala. 626, 98 So.2d 1, this court stated in connection with construing the meaning to be attached to the word "overturn":

"For there to be an 'overturning of the vehicle,' the vehicle must lose its equilibrium."

"Equilibrium" is a state of balance between opposing forces, and the equilibrium of a body is said to be stable if, on being slightly displaced, it tends to return to its original position. Grimh v. Western Fire Insurance Co., 5 Wis.2d 84, 92 N.W.2d 259.

In the present case the trailer had been placed in position for raising its front end. Its tractor motive power had been removed. Except for the raising of the front end of the trailer by the hoist, it was stationary. When the front end of the trailer had been partly raised, the hoist operator noticed one side of the trailer had twisted or bowed out from the middle door to the front. The lifting process was halted and the front end of the trailer hung in that position. That the trailer had not tipped sufficiently to lose its equilibrium, and that the hoist operator had not lost control of it, is manifest from the physical fact that it did not continue tipping further, and was later lowered and resumed its normal position. These facts are established by uncontradicted evidence. To hold that these facts constituted an "upsetting" of the trailer within the terms of provision of the policy relied on would, in our opinion, be an unjustified torturing of the English language as applied to the facts of this case.

A number of appellant's assignments of error assert error in the overruling of appellant's motion for a new trial on grounds going to the sufficiency of the evidence to support the verdict of the jury. The assignments are well taken.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.