**480**

**The AETNA CASUALTY AND SURETY
COMPANY, Appellant,**

v.

**ELECTRONIC EXPLORATIONS, INC.,
Appellee.**

**No. 14819.**

Court of Civil Appeals of Texas.

Houston.

May 19, 1966.

Fulbright, Crooker, Freeman, Bates & Jaworski, William N. Arnold, Jr., Tom Normand, Houston, for appellant.

Blades, Crain, Slator, Winters & Ross, James C. Winters, John F. Ensle, Houston, for appellee.

BELL, Chief Justice.

Appellee recovered judgment against appellant in the amount of $22,050.00 with interest thereon at the rate of 6% per annum from August 30, 1963. Trial was to a jury but the court sustained appellee's motion to withdraw the case from the jury and render judgment in its favor.

Suit was to recover the cost of repairing equipment that was damaged in an accident. Appellee was the owner of an insurance policy denominated "Scheduled Property Floater Policy" issued by appellant. The policy, so far as is material to this case, provides as follows: "This Policy Insures Against:

"2. (g) Collision, * * * or overturning of separate conveyances upon which the insured property is being transported."

Appellant's position here is that there was no collision nor was there an overturn.

Here we must determine whether under the facts there was either a collision of the vehicle on which the equipment was being conveyed or an overturn of the vehicle. We held in the case of Birmingham Fire Insurance Company of Pennsylvania v. Newsom Truck Lines, Inc., Tex.Civ.App., 390 S.W.2d 537, that the determining factor was whether the vehicle carrying the property was in a collision which resulted in damage to the property. This holding was approved by the Supreme Court by a memorandum opinion, refusing a writ of error because of no reversible error, in 394 S.W. 2d 791. The effect of the holding is also to establish that it would be the overturning of the carrying vehicle that is determinative of liability in case of a claim under that portion of the policy.

The vehicle on which the damaged equipment was being carried on the occasion in question was what is frequently called a "swamp buggy." It is also called a "pull boat" and a "mud bucket." There are several nicknames for it. It was described by the president of the company as being a metal object about 18 feet long. It has straight sides and a flat bottom and at the front curved up at an angle. The curve upward was because it had to ride over logs and "things like that". On the front was a winch with a cable. There was a four horse power motor that served to operate the winch. The cable would be attached to a tree ahead of the vehicle and then the motor would be employed to turn the winch which would wind up the cable which would cause the vehicle to be pulled forward. When the vehicle was thus propelled to the tree, the cable was unhooked and then hooked forward to another tree and the process of pulling the vehicle was repeated. The vehicle itself 'had no self-propelling mechanism. On the front of the vehicle were attachments that served as a brush guard to protect the equipment against limb damage. A hut is mounted forward on the vehicle. The hut is light-proof because it is used to develop the photographic records that are made in the seismograph operations. In the front room of the dark room are some chemicals employed to develop the photographic records. On the rear of the dark room is mounted the electronic equipment. On the rear of the carrying vehicle are a battery and battery charger which furnish power to operate the equipment. It is not designed for the purpose of traveling over water, but it will cross canals.

The witness did not describe the vehicle as having depth from bottom to top. From the diagram attached we gather it had some depth, probably of small footage, between the bottom and the top and only deck.

The material incident occurred January 13, 1961, in Louisiana. The foreman in charge of the operation described what happened. The crew was performing seismograph work in a swampy area south of the town of Mermentau. The crew approached a canal. The men pulled the vehicle up to the bank of the canal. A member of the crew, employing an outboard motor boat, took the cable to the other side of the canal and hooked it to a tree about 75 feet away from the canal. The winch was then employed to pull the vehicle across the canal by being operated in the manner above described. The levee on the other side was about 4 feet high. The vehicle was pulled some three or four feet up on the levee, that is, about this much of the bottom of the vehicle was on the levee, when the cable broke. The major portion of the vehicle was over the water and rested on the water, though obviously the major part of the weight was borne by the cable. *When the cable broke the front of the vehicle shot up three feet or something like that. This allowed the back of the vehicle to go down and water started coming in the back.* "*When it went down, it went to one side—partially overturning and water started to come in.*" Finally so much water came over the back that the vehicle slid off the levee and finally went to the bottom of the canal. The chemicals and "stuff" inside were "all strowed around in the recording shack." The equipment was covered with water and none of the chemicals were left. (Emphasis added.)

On cross-examination the witness testified that the front came up, the bottom went down and took on water and the back of the vehicle started going down. The canal was 7 or 8 feet deep. No water got on the equipment until the "boat came off the le*vy, partially overturning off the levy * * * it come off at an angle. It didn't completely turn over.*" The equipment was bolted on the boat and did not come out of it. (Emphasis added.)

The chemicals got on the equipment and damaged it.

We are of the view that the undisputed evidence shows there was an overturning of the vehicle within the meaning of the insurance policy. We deem the cases of Mer-

cury Ins. Co. v. Varner, 231 S.W.2d 519 (CCA) error refused, and Employers Liability Assurance Corp. v. Groninger and King, 299 S.W.2d 175 (CCA), ref., n. r. e., controlling.

In the Varner case certain oil field equipment, including a steel drilling mast was being transported on a trailer over a rough road. The trailer was attached to the truck by what is referred to as a fifth wheel. A kingpin holds the trailer to the fifth wheel. The kingpin broke, the trailer became separated from the truck and tipped forward striking the ground. The mast also fell to the ground. The court held, among other things, that the facts showed an overturning of the vehicle of carriage. There need not be a complete overturn.

In the Groninger and King case, a tractor was being transported on a truck. It was held in place on the truck by chains. As the truck made a right-hand turn from a farm-to-market road onto the highway, the driver swerved the truck to his right and made an abrupt stop to avoid a collision with an oncoming car. This action and the sloping nature of the road caused the truck to tip to the left, its right wheels momentarily leaving the ground. This caused two chains to break and the tractor fell to the ground and was damaged. The court held, among other things, that the above facts showed an overturn of the carrying vehicle within the meaning of the policy.

This view is also supported by authorities in some other states. Jack v. Standard Marine Insurance Co., Ltd., 33 Wash.2d 265, 205 P.2d 351, 8 A.L.R.2d 1426; Moore v. Western Assurance Co., 186 S.C. 260, 195 S.E. 558; and Radella v. Bankers Mutual Fire Ins. Co. of Lancaster, 165 Pa.Super. 633, 70 A.2d 407.

Here there was not a complete overturning but the loss by the vehicle of its equilibrium and the overturning process commenced and it became beyond the power of those in charge to stop its progress. The front end of the boat reared up when the cable broke, the stern went slightly sideways and downward. This permitted water from the canal to get in the vehicle and ultimately to sink the boat and cause damage to the equipment.

The equipment did not fall off the vehicle and hit the ground or water. We do not view this to be of significance. It is the action of the carrying vehicle that is controlling. Birmingham Fire Insurance Company of Pennsylvania v. Newsom Truck Lines, supra.

As the action of the trial court is clearly supported on the theory of an overturning of the vehicle, we find it unnecessary to pass on the question as to whether there was also a collision within the meaning of the policy.

Affirmed.