1455

Edwin A. FOWLER, Appellant v. CANAL INSURANCE COMPANY,
a corporation, Respondent.

(389 S. E. (2d) 301)

Court of Appeals

*Robert M. Rosenfeld*, of *Porter & Rosenfeld*, Greenville, *for appellant.*

*O. Doyle Martin*, of *Leatherwood, Walker, Todd & Mann*, Greenville, *for respondent.*

Heard Jan. 17, 1990.

Decided Feb. 5, 1990.

SANDERS, Chief Judge:

Appellant Edwin A. Fowler appeals from an order of the Circuit Court concluding that he was not entitled to recover under the terms of an insurance policy issued by respondent Canal Insurance Company. We reverse and remand.

The material facts are stipulated.

Mr. Fowler had collision coverage under the policy issued by Canal. The pertinent part of the policy defines a "collision" as "(1) a collision of a covered automobile with another object ... or (2) upset of the covered automobile." The policy insured a tandem dump truck, consisting of a tractor and dump trailer. It is apparently undisputed that, under the terms of the policy, the truck is an "automobile." Rather, the issue decided by the Circuit Court, as well as the issue presented on appeal, is whether what happened to the truck is a "collision."

Mr. Fowler was using the truck to haul sand. He was unloading a load of sand when another driver warned him that the trailer was about to tip over. At the time, the tractor and the trailer were leaning to the left, with the two right tandems partially off the ground. One of two things had happened. Either the load had shifted, causing a walker beam on the rear of the vehicle to break and allow the vehicle to contort, or the walker beam had broken, causing the load to shift, resulting in the contortion. The vehicle was badly damaged as a result.

Mr. Fowler, believing the truck was about to overturn, left it to get help. He returned with a front end loader which was positioned against the side of the trailer. Another front end loader then scooped out a part of the sand until the remainder could be dumped. Although the truck leaned over and contorted, it never completely overturned. That is, no part of the truck touched the ground and, except for the front end loader, it did not lean against any object to prevent it from overturning.

The Circuit Court held: "No upset occurred, as the vehicle did not lose its equilibrium and the overturning process did not commence and proceed beyond the power of those in charge of the vehicle to stop its progress." In other words, the Court held there was no coverage under the policy because the truck did not completely overturn.

In reaching this result, the Court relied on the decision of the Alabama Supreme Court in *American Liberty Ins. Co. v. Moore*, 276 Ala. 634, 165 So. (2d) 724 (1964). There, the Alabama Court adopted as a definition of the word "equilibrium": "a state of balance between opposing forces, and the equilibrium of a body is said to be stable if, on being

slightly displaced, it tends to return to its original position." *Id.* at 637, 165 So. (2d) at 726. Courts in other jurisdictions have reached similar results. *E.g., Jack v. Standard Marine Ins. Co.,* 33 Wash. (2d) 265, 205 P. (2d) 351, 8 A. L. R. (2d) 1426 (1949).

However, our Supreme Court reached a different result in *Moore v. Western Assurance Co. of Toronto,* 186 S. C. 260, 195 S. E. 558 (1938). There, the wheels on the right side of a truck sank in the shoulder of the highway, causing its load to shift and its sideboards to break, resulting in its load spilling onto the ground. The insurance contract covered: "Overturning of the motor truck and/or trailer." In holding the insurance company liable, the Court held: "As to the overturning, the degree of overturning has nothing to do with it. A slight overturning is as much an overturning as a complete overturning." *Id.* at 262, 195 S. E. 559.[1] We are, of course, bound by the decisions of our Supreme Court.

Moreover, it appears that the truck did, in fact, lose its equilibrium under the definition adopted by the Alabama Court. According to that definition, equilibrium is stable where a body tends to return to its original position after being slightly upset. The upset of the truck was not slight, nor did the truck tend to return to its original position. To the contrary, it appears that a front end loader had to be positioned against the truck to prevent it from further overturning.

In any event, where language used in an insurance ■ contract is capable of two reasonable interpretations, the construction which is most favorable to the insured should be adopted.[2] The purpose of an insurance policy is to insure.[3] Insurance policies are written by insurance

---

[1] The insurance policy in the Alabama case covered damage caused by the vehicle becoming "upset." The insurance contract in the South Carolina case covered damage caused by the vehicle "overturning." Both Canal and the Circuit Court cite the *American Heritage Dictionary of the English Language* 1407 (1969). There, "upset" is defined as meaning, in part, "to overturn." At oral argument, counsel for Mr. Fowler agreed that the terms are synonymous. Thus, for the purposes of this case, there is no practical difference between the terms.

[2] *Edens v. S. C. Farm Bureau Mut. Ins. Co.,* 279 S. C. 377, 308 S. E. (2d) 670 (1983). An argument can be made that the fact different courts have construed the language of an insurance policy differently is a good indication the language is ambiguous. *See Federal Ins. Co. v. P.A.T. Homes, Inc.,*

companies. Like Humpty Dumpty, they have the rare privilege of choosing what their words mean.[4] But, unlike Humpty Dumpty, they should say what they mean in advance, not after the fact. For more than a half-century, courts have struggled to ascertain the meaning of the word "upset."[5] The cases have dealt specifically with the use of the word in insurance policies.[6] The results reached have been, in a word, mixed.[7] Yet, Canal chose not to define this key word in its policy. It should be required to pay the price of the misunderstanding thereby created.[8]

For these reasons, the order of the Circuit Court is reversed and the case is remanded with direction that judgment be entered for Mr. Fowler against Canal.

Reversed and remanded.

SHAW and GOOLSBY, JJ., concur.

113 Ariz. 136, 138, 547 P. (2d) 1050, 1052 (1976) ("[W]here various jurisdictions reach different conclusions as to the meaning, intent, and effect of the language of an insurance contract ambiguity is established.").

[3] *See Moore v. Western Assurance Co. of Toronto,* 186 S. C. 260, 262, 195 S. E. 558, 559 (1938) ("[T]he primary object of all insurance is to insure. . . .").

[4] "When I use a word," Humpty Dumpty said, "it means just what I choose it to mean—neither more nor less." Lewis Carroll, *Through the Looking Glass* ch. 6 (1872).

[5] Annot., *What constitutes "upset" or "overturning" within provisions of property damage policy covering losses so caused,* 8 A. L. R. (2d) 1433, 1435 (1949).

[6] *Id.; see also* Annot., *What constitutes "upset" or "overturning" within provisions of property damage policy covering losses so caused,* 5-8 A. L. R. (2d) Later Case Service 668 (1985).

[7] *Id.*

[8] *See McCracken v. Government Employees Ins. Co.,* 284 S. C. 66, 69, 325 S. E. (2d) 62, 64 (1985) ("The terms of an insurance policy must be construed liberally in favor of the insured and strictly against the insurer.").