[Civ. No. 1269. Fourth Appellate District.—April 9, 1934.]

CARL INGALLS, INC. (a Corporation), Appellant, v. HARTFORD FIRE INSURANCE CO. (a Corporation), Respondent.

Brittan & Mack for Appellant.

George H. Hauerken and Borton & Petrini for Respondent.

BARNARD, P. J.—The plaintiff, who was engaged in the trucking business in Bakersfield, contracted with the Southern California Edison Company to haul a quantity of flume iron from Bakersfield to Borel. Between those points there is a winding mountain road. Before beginning the work the plaintiff secured from the defendant an insurance policy denominated ''Trip Transit Insurance'' covering the transportation of this material between the places named.

While one load was being hauled a portion of the flume iron was damaged under the following circumstances: The truck and trailer upon which the material was loaded, and which with the load weighed about twenty-one tons, was proceeding slowly around a sharp curve on this mountain road. At that point a bank had been built up on the right-hand side so that the right side of the road was considerably higher than the left side. The right slope of this bank consisted of dirt recently filled in and which was much softer than the roadbed proper. As the truck and trailer went around this curve the driver kept so far to the right that the trailer straddled this bank in such a manner that its right wheels were near the bottom of the right slope of the bank and were then approximately at a level two feet lower than the level of the left wheels, which remained on the road proper. While the trailer was in this position the right-hand wheels thereof sank into the soft dirt some six inches

or a foot more and this, combined with the higher elevation of the left wheels, caused the left wheels of the trailer, or some of them, to raise about a foot from the ground, which, in turn, caused the heavy load to slide off to the ground, resulting in the damage in question. According to one part of the evidence the left wheels of the truck were raised about a foot from the ground and according to another part of the evidence a particular witness only saw the left rear wheels of the trailer raise about a foot from the ground at a particular time. In any event, while the left wheels of the vehicle were elevated some two and one-half or three feet above the right wheels, a part of the left wheels left the ground and the truck turned over to the right side sufficiently to dump the load. After the load slipped to the ground the left wheels settled back to the roadbed and the driver was able to pull the trailer back on the road. The flume iron was damaged by being thrown from the trailer to the extent that it was unfit for the use intended and was rejected by the consignee, and the plaintiff was compelled to replace it with new iron. This action followed to recover under the policy for the loss sustained. At the close of the plaintiff's case the defendant moved for a nonsuit upon the ground that the cause of the loss was not a peril insured against in the policy and upon the further ground that the plaintiff had not established the amount of damages with sufficient certainty. The motion was granted and a judgment of nonsuit entered, from which this appeal was taken.

■ There is sufficient evidence as to the amount of damage to sustain a judgment and the only real question presented is as to whether, under the terms of the policy, the loss in question occurred from one of the perils insured against.

The contract of insurance in question consisted of a general open policy, to which was attached a rider and a certificate. The policy itself contains the following clause:

"This Policy Insures

" (Within the foregoing provisions, and except as hereinafter provided.)

"While on land against loss or damage caused by fire, lightning, cyclone, tornado, flood (Meaning thereby the rising of navigable waters), earthquake, explosion, landslide, collision (the coming together of cars during coupling, not

to be deemed a collision), derailment, overturning of vehicle, collapse of bridge or culvert, and other perils of transportation; . . . "

Among the conditions named therein is the following:

"It is a condition of this policy, that liability hereunder shall attach as the said goods, wares, and/or merchandise are delivered to and accepted by the railroad company or other carrier at or on its automobile, conveyance, wharf or depot and shall continue (while in transit) until the arrival of same or the several portions thereof at the destination hereinbefore named and for the additional time reasonably necessary for the removal of said property or the several portions thereof from the automobile, car, conveyance, wharf or depot (as the case may be)."

The rider contains the following clauses:

"While on Automobile Truck:—Covering only while on truck in transit between places named therein. Against direct loss or damage caused by fire, lightning, cyclone, tornado, flood (meaning rising waters), collision, overturning of the truck and collapse of bridges."

"Should any claim arise hereon for loss or injury to any part of the interest insured this policy to be liable only for the cost of replacing the part or parts lost or damaged."

The certificate, like the policy and the rider, is headed "Trip Transit Insurance". It certifies that the company insures the appellant under the policy named on 108 pieces of flume iron weighing 22 tons on a trip from Bakersfield, California, to Borel, California, to be shipped by motor-truck and/or trailer, giving the valuation of the shipment and the premium. It contains the following clause:

"The Policy Covers

. . . . . . . .

"While on Automobile Truck: Covering only while on truck in transit between places named. Against direct loss or damage caused by fire, lightning, cyclone, tornado, flood (meaning rising waters), collision, overturning of the truck and collapse of bridges."

The appellant contends that the accident causing the damage to this iron was within the perils insured against by the policy, both because it occurred through the overturning of the trailer and because it was one of the "other perils of transportation" set forth in the insuring clause of

the policy. The respondent contends that there was no overturning of this vehicle within the meaning of the policy and that the policy did not insure against "other perils of transportation" since that portion of the insuring clause set forth in the policy is omitted from the statement of what the policy covers which is set forth both in the rider and in the certificate. Under the view we take of the first of these propositions it will be unnecessary to consider the second.

All three portions of the policy referred to include the provision that the merchandise in question shall be insured, with certain exceptions not here material, while the same was in transit between the places named, against loss or damage caused by certain designated things, including the overturning of the truck. By the certificate these provisions were made applicable to the trailer. The policy and the rider are general in their nature while the certificate particularly designates the merchandise to be carried, between what points it was to be carried, and that it was to be carried either on a truck or a trailer.

The most important question presented is as to the meaning of the phrase "overturning of the truck". The respondent contends that nothing less than a complete overturning of the vehicle was contemplated by the policy and that the truck or trailer could not be said to have overturned until it had completely tipped over or until it had come to rest upon some part or parts thereof other than the wheels. We are unable to agree with this interpretation of the language used. As was said in *Granger* v. *New Jersey Ins. Co.*, 108 Cal. App. 290 [291 Pac. 698, 700], "A risk fairly within contemplation is not to be avoided by any nice distinction or artificial refinement in the use of words." Section 1644 of the Civil Code provides:

"The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed."

In *Moblad* v. *Western Indemnity Co.*, 53 Cal. App. 683 [200 Pac. 750], the court quotes from another case as follows:

" 'It is a fundamental rule that the language of a contract is to be accorded its popular and usual significance. It is not permissible to impute an unusual meaning to language used in a contract of insurance any more than to the language of any other contract.' "

We take it that the ordinary and popular sense thus to be attributed to the words of a contract is to be related to the circumstances under which they are used, having in mind the purpose of the contract and the general situation which brought it into existence. In the case of *Meyerstein* v. *Great American Ins. Co.*, 82 Cal. App. 131 [255 Pac. 220], the court said:

"Where, then, the language may be understood in more senses than one, the rule of law is that an insurance policy is to be construed liberally in favor of the insured, and any uncertainty or ambiguity in the contract is to be interpreted most strongly against the insurer."

In examining this contract, with these rules in mind, it not only appears that the purpose for which this insurance was taken was to insure this cargo while in transit between the two points, but it is to be noted that the perils insured against are those which might naturally be expected to affect the merchandise while thus being transported, including such items as collision, overturning of the vehicle and collapse of bridges. It was the merchandise rather than the vehicle which was insured and the safety of the merchandise was the object of taking out the insurance. While it must be conceded that the liability of the insurance company is limited by the terms of the policy and that the same does not extend to a damage arising from some peril not insured against, the perils named in all portions of the policy indicate an intention to cover most of the natural risks usually to be expected in transporting the property. A collision or a collapse of a bridge would be important only as it affected the merchandise being transported. Similarly the overturning of the truck is important only for the same reason. The effect of an overturning on the merchandise, which may thereby be dumped on the ground, is the same whether that overturning be complete or only partial, so long as it is sufficient to cause the injury. We see nothing in the language used to compel the conclusion that the insurance company was to be liable

in case the vehicle completely overturned and be free from liability in case it only partially overturned. It is perfectly apparent from the evidence here that if the chains by which the load was fastened on this trailer had not broken, the trailer would have come to rest on its side and would then have been "overturned" within the meaning contended for by the respondent. The fact that the chains broke and the load slipped off before the trailer came to rest and that, with the load removed, the vehicle righted itself, is not conclusive unless the overturning referred to in the policy and in the certificate must be construed to be a complete and permanent overturning. Even then the question would remain whether a vehicle lying on its side would be overturned or whether all wheels must be in the air in order to come within the language used. It is significant that the covering clause limits the kind of flood insured against, but places no limitation or definition upon the other perils covered. It could hardly be argued that a loss caused by a collapse of part of a bridge was not covered because there had not been a total collapse of the bridge. The degree or amount of overturning of the vehicle used is no more fixed by the language used than is the degree or extent of collapse in a bridge.

Having in mind the purpose of the policy, the general circumstances and the other provisions of the policy, as well as the clause here in question, and under the rules above referred to, we are of the opinion that there was an overturning of this vehicle within the meaning of the policy. It must be admitted that the vehicle partially overturned, causing the damage in question, and the language used in the policy is broad enough to cover both a partial and a complete overturning of the vehicle. In ordinary parlance, anything has been overturned when it has been sufficiently tipped over to spill its contents and, in the absence of anything in the policy indicating a different meaning, the ordinary sense of the words used should not "by any nice distinction or artificial refinement" be changed in order to avoid a risk which seems to have been fairly within the contemplation of the policy.

The judgment is reversed.

Marks, J., and Jennings, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 31, 1934.