EMPLOYERS LIABILITY ASSUR. CORP., Ltd., Appellant,

v.

GRONINGER & KING, Appellees.

No. 15162.

Court of Civil Appeals of Texas.

Dallas.

Nov. 30, 1956.

Rehearing Denied Jan. 25, 1957.

R. T. Bailey, Dallas, for appellant.

J. E. Thompson, Pampa, for appellees.

DIXON, Chief Justice.

Appellees, plaintiffs in the trial court, filed suit against appellant on two insurance policies, seeking to recover for damages sustained when a caterpillar tractor owned by appellees fell off a trailer truck or float, also owned by appellees. Trial was to a jury, but at the conclusion of the testimony the trial court instructed a verdict in favor of appellees for $1893.30, which the parties had agreed was the amount of the damages sustained by the caterpillar tractor.

The only witness who testified as to how the accident occurred was one of appellees' employees. He testified that on November 14, 1953 about daybreak he was driving the trailer truck upon which the caterpillar tractor was being transported. The tractor was tied down on the truck with three chains. As the operator was undertaking to execute a right turn with the truck from a farm-to-market road onto a highway, he swerved to his right and came to an abrupt stop to avoid a collision with a car coming along the highway in the same direction he was turning. The slope of the farm-to-market road toward the left together with the truck's swerve to the right and

sudden stop, caused the truck to tip to the left, its right wheels momentarily leaving the ground, with the result that the caterpillar tractor broke two of the chains holding it and fell to the road, sustaining extensive damage.

Policy No. T–101132, one of the two involved in this controversy, is commonly referred to as a "Contractor's Equipment and Floater Policy". It insured the damaged caterpillar tractor. The pertinent part of this policy is as follows:

"This policy insures, except as hereinafter excluded, only against direct loss or damage caused by:

"(d) Collision, derailment or overturning of conveyance while the insured property is being transported thereon."

Policy No. T–101130 covered the trailer truck upon which the damaged caterpillar tractor was being transported, but it also insured pipe and machinery carried on the truck. The pertinent part of this policy is as follows:

"This policy insures, except as hereinafter excluded, only against loss or damage due to:

"(b) Collision, i. e., accidental collision of the above described vehicles with any other vehicle or object."

There is no controversy between the parties as to the extent of the damages sustained by the caterpillar tractor or as to the issuance of the two insurance policies referred to above.

However, appellant does allege that two material errors were made by the trial court. It says (1) that a fact question was presented as to whether the fall of the tractor was caused by the tipping of the trailer truck, hence it was error to instruct the verdict against appellant; and (2) that the word "overturning" in Policy No. T–101132 is used in its usual, customary, and generally accepted meaning, and the tipping of the trailer truck, if it actually tipped, did not constitute an overturning within the purview of the insurance contract.

We shall first take up consideration of appellant's point No. 2. It will be observed that Policy No. T–101132 insures against damage caused by either "collision" or "overturning." Yet in its brief appellant confines its discussion to the question of liability under the "overturning" provision in the policy. In answering appellant's point No. 2, appellees point out that since the institution of their suit they have asserted that there was a "collision" as well as an "overturning" within the coverage of the policies. In one of their counterpoints they take the position that appellant is liable under the "collision" provision in the policy regardless of whether it is liable under the "overturning" provision. Neither of the policies contains the provision sometimes found in policies providing against liability for damage due to the striking of a curb, or a roadbed, or any stationary object. Therefore in our present discussion we shall consider both the "overturning" and the "collision" provisions in the policies.

█ It is not contended by appellees that there was an entire or complete physical overturning of the trailer truck on which the caterpillar tractor was being transported. It is their contention that as a matter of law there was an overturning within the meaning of that word as used in the insurance contract when the trailer truck tipped to the left, causing the caterpillar tractor to break its chains and fall from the truck to the pavement.

The weight of legal authority supports appellees' contention. In Mercury Ins. Co. v. Varner, Tex.Civ.App., 231 S.W.2d 519, a mast was being transported on a trailer truck. The trailer became detached, and the trailer and the mast tipped forward, causing the mast to strike the ground and become damaged. The court held that the tipping of the trailer in such a manner as to cause the load or a portion thereof to spill

or fall off was an overturning within the meaning of the policy. To the same effect is the holding in Carl Ingalls, Inc., v. Hartford Fire Ins. Co., 137 Cal.App. 741, 31 P. 2d 414, and Moore v. Western Assurance Co., 186 S.C. 260, 195 S.E. 558. The subject is annotated in 8 A.L.R.2d 1433, 1436, where it is stated that according to all the cases in point a complete overturning is not essential.

■■ We think that appellees are also correct when they say that there can be a collision within the meaning of the policies when the object with which the vehicle collides is the roadbed. Mercury Ins. Co. v. Varner, supra, so holds. See also Wood v. Southern Casualty Co., Tex.Civ. App., 270 S.W. 1055.

■ There is a division of authority as to whether there is liability when only the cargo and not the carrying truck itself makes contact with an object. This division of authority is recognized in Garford Trucking Co., Inc., v. Alliance Ins. Co., 2 Cir., 195 F.2d 381, and in 36 A.L.R.2d 506, 523, 526. In the Garford case the court held that there was liability when only the cargo made contact with an object. In our opinion the Texas rule is that under policies such as we have here, it is sufficient when the load or cargo collides with an object, though the carrying truck itself may not make actual contact with the object. Continental Ins. Co. v. Griffin, Tex.Civ.App., 218 S.W.2d 350; Mercury Ins. Co. v. Varner, Tex.Civ.App., 231 S.W.2d 519.

We overrule appellant's point No. 2 and sustain appellees' counterpoints Nos. 1 and 2.

We now come to appellant's point No. 1 which was as follows:

"A question of fact was presented as to how the caterpillar tractor sustained the damages sued for. The witness, Geoffrey Williams, an employee of the plaintiffs, was the only one that testified relative to such facts, and the trial court erred in discharging the jury, and rendering judgment for the plaintiffs, because such witness testified on direct examination that the float upon which the caterpillar was being transported tipped to one side and the caterpillar fell off and was damaged; however, he admitted that shortly after the incident occurred that he had given a written statement in which he stated that he applied the brakes on his tractor and chains that held the tractor down broke, and the tractor fell off."

■ The driver of appellees' truck was not a party to the suit, but as he was appellees' employee and participated in the events which are the subject of inquiry, we consider him an interested witness. He was the only witness to testify in regard to how the accident occurred. His testimony was uncontradicted. The question is: Was it error under the circumstances presented in this record for the trial court to direct a verdict in appellees' favor?

■ The rule of law which we accept as controlling was stated by Justice Alexander of the Waco Court of Civil Appeals, later Chief Justice of our Supreme Court. We quote: "We recognize that there is a general rule that testimony of an interested party to a suit, though not contradicted by any other witness does no more than raise an issue for the determination of the jury. Pope v. Beauchamp, 110 Tex. 271, 219 S.W. 447. But there is an apparent exception to this rule where the testimony of the interested witness is not contradicted by any other witnesses, or attendant circumstances, and the same is clear, direct, and positive, and free from contradictions, inconsistencies, and circumstances tending to cast suspicion upon it. In such cases it is held that an instructed verdict may be given on such testimony [Citing numerous authorities]." Springfield Fire & Marine Ins. Co. v. Wm. Cameron & Co., Tex.Civ.App., 96 S.W.2d 788, at page 790. In Cochran v. Wool Growers

Central Storage Co., 140 Tex. 184, 166 S.W. 2d 904, at page 908, our Supreme Court cites the above opinion and says that it correctly states the law. It has been followed as late as Luttes v. State, Tex.Civ. App., 289 S.W.2d 357, at page 375.

We have concluded that the circumstances of this case bring it within the exception rather than within the general rule, and that therefore it was not error for the trial court to instruct the verdict in appellees' favor in this case.

Appellant attacks the credibility of the witness on the ground that he testified at the trial that the trailer truck tipped, whereas in a written statement made earlier he did not mention the tipping. This, says appellant, constituted a conflict between the witness's earlier statement and his testimony. The statement was marked as an exhibit but was not introduced into evidence. It is not shown in the statement of facts. However the witness stated that he had signed a written statement.

We believe it appropriate to quote excerpts from the testimony on cross-examination concerning the written statement, which testimony appellant claims establishes the conflict:

"Q. Mr. Williams, didn't you give a statement about this about a month after that happened? * * * A. Yes, sir, I gave one. It seems like I did. I filled out so many, you know how it is, but I believe I did.

"Q. I will ask you if it isn't true that at that time when you gave this statement you described and told them how this accident happened? A. I think I did, sir. It has been so long, I might have forgotten, sir.

"Q. Well, it has been so long, your memory would be fresher about it at that time, a month after it happened than it would now, wouldn't it? A. Well, I know exactly how it happened, because I thought I was going to turn over myself.

"Q. My question was, that your memory would be fresher back there at that time about what happened than it would now, wouldn't it? A. I don't know sir.

"Q. Well, you would at least remember the date, and you didn't remember the date. A. I thought it was already settled. I didn't even know this was coming up until just a day or two ago. * * *

"Q. * * * When I applied the brakes on my unit to stop and also turning, the chain that held the tractor tied down, broke and the tractor fell off of my truck * * * A. Well, the leaning of it, broke it probably.

"Q. Didn't you state that, that is what I asked you? A. Yes, sir, I guess I did. * * *

"Q. Is that your signature? A. Sure is, sir. * * *

"Q. * * * Who was present when you signed it? A. I believe it was that insurance man, sir. I don't know Etheridge or * * *

"Q. Anybody else? A. Not as I can recall, sir. * * *

"Q. He talked to you, and asked you what happened? A. I believe it was Etheridge, wasn't it, sir?

"Q. Well, whoever it was, asked you what happened? A. That's right, sir.

"Q. And what happened was written down here and you signed it? A. Yes, sir.

"Q. You read it over before you signed it, didn't you? A. No, sir.

"Q. Huh? A. No, sir.

"Q. Well, did you have it in your hand when you signed it? A. Yes, sir, but he read it, sir.

"Q. Huh? A. He read it, sir, I didn't.

"Q. Can you read it now? A. Yes, sir. (The witness inspects the statement)."

In our opinion the evidence does not show a conflict between the testimony of the witness and his prior statement. Since the written statement itself was not offered in evidence, the record does not contain a copy of it. So we cannot say what it does or does not contain. It may be that it makes no mention of the tipping of the truck, in which case there would be an omission but not a conflict. However, we see nothing in the circumstances even to suggest an intentional, furtive omission, or knowing concealment.

Anyway, for another reason, we think appellant's position is not well taken. There can be no doubt under the record before us that the tractor for some reason fell off the truck and collided with the roadbed, sustaining damage. It is not contended by appellant that the written statement conflicts with the witness's testimony as to that feature of the accident. In fact appellant's defense as set out in its brief is based on the theory that the jury could have found that the tractor fell to the pavement, not because of the tipping of the truck, but simply because of the sudden stop and the breaking of the chains holding the tractor. But such fact, if true, constitutes no defense, for as we held in passing on appellant's point No. 2, liability under the Policy No. T–101132 attaches in case of collision of the tractor with the roadbed, as well as in case of the tipping of the truck.

We believe that the testimony of the interested witness, not being contradicted by any other witness, or attendant circumstances, and being clear, direct and positive, and free from contradictions, inconsistencies and circumstances tending to cast suspicion on it, is sufficient to support the instructed verdict in this case.

The judgment of the trial court is affirmed.

On Motion for Rehearing.

On rehearing appellant calls attention to our erroneous statement that the trial court instructed a verdict for appellees. We are glad to correct our statement. The fact is that the trial court took the case from the jury on its own motion, discharged the jury, and entered judgment for appellees.

Appellant also says that we erred in holding that the written statement of the witness Geoffrey Williams should have been introduced in evidence. It is evident that appellant has misinterpreted our statement. We merely stated that the statement was not introduced in evidence, which is a fact; and that it was not shown in the record, which is also a fact. We did not say that the instrument *should* have been introduced in evidence.

■■ We agree with appellant's statement of the law: " * * * such statement was not admissible in evidence because the party making such statement admitted that he had made the same. The statement would have been admissible only for impeachment purposes, and since the witness admitted making the statement, then the statement is not admissible." It is only when a witness denies making a written statement which contains assertions in conflict with his later testimony that the written statement becomes admissible for impeachment purposes only.

In this case the witness on cross-examination said that he had signed a written statement. But he did not testify or admit that the statement contained assertions in conflict with his testimony from the witness stand. At most his testimony may be taken to mean that his written statement omitted to say that the truck tipped in the course of coming to a sudden stop as it rounded the corner. In our opinion such omission under the circumstances did not constitute a conflict. As the written statement is not shown in the record (we

do not say it should have been), it was of course impossible for us to check it further against the witness' testimony from the stand.

The motion for rehearing is overruled.