**BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA, Appellant,**

**v.**

**NEWSOM TRUCK LINES, INC., Appellee.**

No. 14571.

Court of Civil Appeals of Texas.

Houston.

April 29, 1965.

Rehearing Denied May 27, 1965.

Fulbright, Crooker, Freeman, Bates & Jaworski, Newton Gresham and Tom Connally, Houston, for appellant.

Oldham & Lorance, Arthur Stamm, Jr., Houston, for appellee.

WERLEIN, Justice.

Appellee, Newsom Truck Lines, Inc., brought this suit against appellant on a "Motor Truck Cargo Policy" to recover

damages allegedly resulting to a General Electric circuit breaker which, while being transported on appellee's truck, struck an overhanging limb. The facts were stipulated by the parties and the trial judge rendered judgment for the amount of the agreed loss less the deductible amount provided for in the policy. It was stipulated that the circuit breaker constituted a high load rising to a height of several feet above the cab of the truck, and that no part of the truck was in contact with the overhanging limb which the circuit breaker struck.

In its one point of error appellant asserts that the trial court erred in construing the phrase " * * * accidental collision of the vehicle with any other vehicle or object * * *" so as to afford coverage to a collision between an overhanging limb and protruding cargo when no portion of the truck came in contact with the limb.

The policy insures appellee, "as provided in the form attached on shipments of lawful goods and merchandise (hereinafter called property) described therein, while in or on the vehicles described and in transit within the territory prescribed, against loss or damage caused, while this policy is in force, *by the perils specified*." (Emphasis added.)

The "Truckmen's Form" attached to and forming a part of the policy issued to appellee provides:

"This policy covers the liability of the Assured as carrier, bailee or warehouseman under tariff, bill of lading or shipping receipt issued by the Assured, for direct loss or damage, *from perils hereinafter specified,* on shipment of lawful goods or merchandise (hereinafter called Property) consisting of OIL FIELD AND/OR CONTRACTOR'S MACHINERY OR EQUIPMENT while loaded for shipment and in transit in or on vehicles owned, leased or operated by the Assured * * within the Continental United States and Canada." (Emphasis supplied.)

The Truckmen's Form attached also provides:

"THIS POLICY INSURES the Assured's Liability for Loss of or Damage to Property Insured Hereunder Directly Caused by:

"(a) fire, including self-ignition or internal explosion of the vehicle;

"(b) collision, i. e., accidental collision of the vehicle with any other vehicle or object (the striking of curbing or any portion of the roadbed or the striking of rails on ties of street, steam or electric railroads, or contact with any stationary object in backing for loading or unloading purposes, or the coming together of trucks and trailers during coupling or uncoupling, shall not be deemed a collision);

"(c) overturning of the vehicle;

"(d) collapse of bridges or docks;

"(e) rising navigable waters or river floods;

"(f) perils of the seas, lakes, rivers or inland waters while on ferries only;

"(g) cyclone, tornado or windstorm, excluding loss or damage caused by hail, rain, sleet or snow, whether or not driven by wind."

The sole question before this Court is whether the damage to the circuit breaker is within the coverage afforded by the policy since no part of the truck actually came in contact with the limb. Appellant contends that the foregoing provision is clear and unambiguous and hence there can be no recovery by appellee. There are several Texas cases apparently holding contrary to such contention. The Supreme Court of Texas has not passed on the question. There is a division of authority in other states. In some jurisdictions the foregoing provision has been construed in a manner which would permit recovery under the circumstances of the instant case, while in other jurisdictions recovery has been denied.

In Garford Trucking v. Alliance Ins. Co. of Philadelphia, 1952, 2nd Cir., 195 F.2d 381,

the policy contained the following provision: "d. Collision of vehicle, overturning or other accident to the conveyance." In such case no part of the truck struck the overhead bridge nor was the truck damaged in any way, but the turbine which was being transported sustained damage when it came into contact with the bridge. The court held that the assured could recover, since the occurrence came within the provision "other accident to the conveyance." The court did not base its decision upon the collision provision in the policy.

In Employer's Liability Assurance Corporation v. Groninger & King, Tex.Civ.App. 1956, 299 S.W.2d 175, error ref., n. r. e., the policy contained provisions almost identical with the provisions of the policy in the instant case, with respect to collision and overturning of the vehicle or conveyance. The court in its opinion considered both such provisions and affirmed the judgment of the trial court in favor of the assured apparently on both grounds. The court said:

> "There is a division of authority as to whether there is liability when only the cargo and not the carrying truck itself makes contact with an object. This division of authority is recognized in Garford Trucking Co., Inc., v. Alliance Ins. Co., 2 Cir., 195 F.2d 381, and in 36 A.L.R.2d 506, 523, 526. In the Garford case the court held that there was liability when only the cargo made contact with an object. In our opinion the Texas rule is that under policies such as we have here, it is sufficient when the load or cargo collides with an object, though the carrying truck itself may not make actual contact with the object. Continental Ins. Co. v. Griffin, Tex.Civ.App., 218 S.W.2d 350; Mercury Ins. Co. v. Varner, Tex.Civ.App., 231 S.W.2d 519."

It will be noted that the court in making the foregoing statement relied upon Garford Trucking v. Alliance Ins. Co. of Philadelphia, supra, although the Court in that case did not base its decision upon the collision provision of the policy, and also relied upon two cases decided by the Eastland Court of Civil Appeals, with no writ history.

In Continental Ins. Co. v. Griffin, Tex. Civ.App.1949, 218 S.W.2d 350, one Paul Griffin, a house mover, who owned house moving equipment consisting of a truck, skids and dollies, obtained an insurance policy from Continental Insurance Company insuring him against damage to houses while on his truck in transit. The insurance policy contained the same provision with respect to collision as the policy in the instant case. The printed part of the policy provided for insurance against damage to goods and merchandise, consisting principally of "houses", while being transported. The word "houses" was typewritten into the printed form. While the assured was moving a house on his truck along a highway, the house struck a culvert. Neither the truck nor the trailer struck anything. The court said:

> "The policy plainly shows that it was intended to cover damage to a house while being transported on Griffin's truck. We think it was the intention of the parties to insure Griffin against damage as a result of an accidental collision of a house on the truck with any other object."

In Mercury Ins. Co. v. Varner, Tex.Civ. App., 231 S.W.2d 519, the appellee alleged that he was moving a drilling mast on a truck and trailer from one location to another. The fifth wheel device holding the kingpin broke or came loose, whereupon the trailer became detached and the load fell to the ground, breaking and damaging the drilling mast. The court properly held that the tipping of the mast on the trailer, and the resultant fall was a partial overturn that came within the meaning and intent of the term "overturn" as used in the policy. After so deciding, the court said: "We are also of the opinion that there was a collision within the meaning of the policy." Having decided the case under the overturning provision of the policy, it was, of course,

unnecessary for the court to add the additional sentence with respect to collision.

In the instant case there was typewritten in the printed Truckmen's Form the words "OIL FIELD AND/OR CONTRACTOR'S MACHINERY OR EQUIPMENT". No specific property was described as was done in Groninger & King, supra. In that case the parties knew that houses are necessarily cumbersome objects to transport and quite likely to protrude in all directions from the moving vehicle, so that it would be practically impossible for the truck to collide with anything since more or less protected by the protruding house. The parties contracted for insurance with respect to specific property which was described in the policy. In the present case, however, oil field and/or contractor's machinery or equipment may be large or small, and consist of many things. The parties did not contract with respect to the transportation of any specifically described property which would necessarily or in all probability extend above the top of the truck or beyond the sides or rear thereof.

■ We have read the out-of-state cases cited by appellee, and also those cited by appellant. We have concluded that the decisions relied upon by appellant are better reasoned and should be followed in deciding the instant case. Some of the cases relied upon by appellee in which the plaintiff recovered may be distinguished factually from the present case in that the cargo in such cases was specifically described in the insurance policies and consisted for the most part of large, cumbersome property that would necessarily extend out beyond the sides of the conveyance or above the cab thereof.

In Jorgenson v. Girard Fire & Marine Ins. Co., 1949, 229 Minn. 48, 38 N.W.2d 209, there was a clause in the policy that showed that the cargo consisted of a combine so loaded that 5½ or 6 feet of the cutter bar projected beyond the right edge of the truck body. In passing a stalled truck the outside edge of the cutter bar of the combine caught the corner of the stalled truck, doing injury to both trucks and the combine.

In Gould Morris Electric Co. v. Atlantic Fire Ins. Co., 1948, 229 N.C. 518, 50 S.E.2d 295, the cargo was described as 26 electric water heaters packed in crates, four of which protruded above the top of the truck. The court said that the policy insured against loss or damage to specific items of property and that the parties knew from the amount of insurance and the character of the shipment that in all probability portions of the cargo would extend above the top of the truck.

In Bucks County Const. Co. v. Alliance Ins. Co., 1948, 162 Pa.Super. 153, 56 A.2d 338, the cargo was described in the policy of insurance as a power shovel. The court said that "Because of the bulk of this equipment, specifically described in the policy of insurance, the insurer should not be relieved from liability if the loaded shovel extended over the sides of the conveyance, thus protecting the conveyance from colliding with anything but subjecting the shovel to the whole impact of collision."

In C. & J. Commercial Driveway v. Fidelity & Guar. Fire Corp., 1932, 258 Mich. 624, 242 N.W. 789, the cargo consisted of automobiles specifically described as such. The court said: "When considered in its entirety, it will be noted that on its face the policy insures the automobiles on the hazards of the road while they are in transit."

In Edgerton & Sons v. Minnesota Fire & Marine Ins. Co., 1955, 142 Conn. 669, 116 A.2d 514, the cargo consisted of a lathe which was so described. Furthermore, the truck itself came into contact with a culvert which caused the truck to rise up with its load so that a part of the load hit the overhead bridge. Such case is clearly distinguishable.

In the instant case since the cargo was not specifically described, appellant had no means of knowing the size or nature thereof. Appellee did know the size and

nature of the cargo and was responsible for the manner in which it was arranged on the truck and transported. It cannot be said that the circuit breaker upon being placed upon the truck became a part of the vehicle or conveyance, especially in view of the definition of the term "vehicle" as used in the policy. The policy provides: "The term 'vehicle(s)' wherever used in this policy shall mean the motor vehicle(s), trailer(s), semi-trailer(s) or other vehicle(s) described herein." Moreover, the policy in the instant case is not an "all risk" policy, designed to cover practically all losses. It is a "limited risk" policy insuring only against some seven specified perils hereinabove set out, one of which is "collision, i. e., accidental collision of the vehicle with any other vehicle or object." This provision is simple and plain and means what it says. It is not complicated or ambiguous. Anyone could read it and understand it.

In Employers Mut. Cas. Co. of Des Moines, Iowa v. Nelson, Tex.Sup.1962, 361 S.W.2d 704, the court said:

"Although contracts of insurance are said to be construed strictly in favor of the insured, nevertheless they are to be construed generally as other contracts, in that unambiguous words and phrases are to be taken in their ordinary meaning unless there is something in the contract that would indicate a contrary intention. United American Ins. Co. v. Selby, 161 Tex. 162, 338 S.W.2d 160."

Appellant relies on several cases in which recovery has been denied, under policies containing the same or similar provision with respect to collision as the policy in this case. In Old Colony Ins. Co. v. Anderson, 10th Cir., 246 F.2d 102, the cargo consisted of a drilling unit being transported. The boom chains broke, causing the unit to slide off the truck and onto the ground where it struck or collided with a parked truck on the roadside. The truck did not collide with any object, nor did it overturn. The court referred to the often cited case of C. & J. Commercial Driveway

v. Fidelity & Guar. Fire Corp., supra, in which the plaintiff recovered for damage to cargo consisting of automobiles, when the front end of the front automobile came in contact with an overhanging plank and was damaged. The court said:

"Other well, and we think better, reasoned cases construe identical or similar insuring clauses as unambiguously insuring cargo only against damages caused by collision of the means of conveyance, and excluding from coverage damages caused by collision to the cargo alone. Thus, in Mendelsohn v. Automobile Ins. Co., 290 Mass. 228, 195 N.E. 104, with identical policy provisions and facts indistinguishably similar to C. & J. Commercial Driveway v. Fidelity & Guaranty Fire Corp., supra, the court arrived at an opposite result. The Massachusetts court could find no ambiguity in the insuring language, but on the contrary thought that the words used to define the peril insured against were 'simple, everyday words and the structure of the sentence where they appear * * * not complicated.' The court accordingly construed the contract as not including liability for damage resulting from the collision of the cargo and not the conveyance."

The court also referred to the case of Garford Trucking v. Alliance Ins. Co., supra, and stated: "The Second Circuit thought that a collision of the cargo with an overhanging bridge was an accident to the conveyance within the meaning and coverage of the policy, although not a 'collision of vehicle.' "

The decision of the Supreme Court of Massachusetts in the Mendelsohn case was followed in Barish-Sanders Motor Co. v. Fireman's Fund Ins. Co., 1938, 134 Neb. 188, 278 N.W. 374, and Hamilton Trucking Service v. Automobile Ins. Co., 1951, 39 Wash.2d 688, 237 P.2d 781. In the latter case the collision provision was identical to that in the instant case. The cargo consisted of a saw

that had been loaded on the flat bed of a truck. The saw was damaged by coming in contact with the framework of an underpass, but there was no collision with the truck. The court said:

"The words of the part of the policy under consideration must be accorded their ordinary meaning. The language used is plain and unambiguous. There is nothing to interpret or construe. We cannot avoid feeling as we read the cases cited by respondent that those courts have created ambiguities where none existed and have then used rules of construction to determine the intent of the parties and what they must have contemplated, thus enlarging the risk coverage of the insurance policies under consideration."

See also Annotation, 36 A.L.R.2d 522–527.

In Wolverine Ins. Co. v. Jack Jordan, Inc., 1957, 213 Ga. 299, 99 S.E.2d 95, the provision with respect to collision was identical with that in the policy in the instant case. The loss occurred when the property being transported struck an underpass and was damaged. The vehicle transporting the property did not come in contact with the underpass or any other object and was not damaged in any way. The court said that it was well settled that the courts of Georgia, if there is any ambiguity in an insurance policy, will construe the contract most favorably to the insured; but that it was equally well settled that no construction is required or even permissible when the language employed by the parties in their contract is plain, unambiguous, and capable of only one reasonable interpretation. The court then said:

"The plain words of the policy insure against losses to the insured property which result directly to the property from a collision of the vehicle on which the property is being transported. This is the plain, unambiguous, literal meaning of the policy. The policy does not expressly cover damage to property caused simply 'by collision' or 'by collision of the vehicle or property'; but this particular type of coverage is restricted to loss or damage to the property caused by collision of the vehicle described in the policy. * * *

"* * * By its terms the instant policy insures only against specified perils, and the language employed to describe the peril of collision insured against is plain and unambiguous."

We do not doubt that appellee thought that the policy in question furnished coverage under the circumstances of this case. Its misapprehension in that regard has probably resulted from failure to carefully read the policy and to ascertain the perils insured against. Since the insured's loss was not caused by an accidental collision of the vehicle, we are compelled to reverse and render the case.

Reversed and rendered.