**WASHINGTON GENERAL INSURANCE CORPORATION, Appellant,**

**v.**

**Grady H. KING, Appellee.**

**No. 4256.**

Court of Civil Appeals of Texas.

Eastland.

Nov. 1, 1968.

Rehearing Denied Nov. 27, 1968.

Witts, Lee & Rugh, Wayne E. Lee, Dallas, for appellant.

Woodruff, Hill, Bader & Kendall, Bill Cox, Dallas, for appellee.

WALTER, Justice.

Grady H. King recovered a judgment on an instructed verdict against Washington General Insurance Corporation on an outboard motor boat insurance policy. The insurance company has appealed.

Appellant contends there was a fact issue on whether there was an overturning of appellee's boat trailer; whether his boat trailer was involved in a collision; whether his trailer struck traffic buttons, and whether damage to the boat was caused by an overturn or collision of his boat trailer.

The applicable portion of the policy is as follows:

"This policy insures:

1. Against physical loss of or damage to the insured property directly caused by:

(b) While in transit: derailment, collision and/or overturn of transporting land conveyance";

■ Appellant says "it is uncontradicted that appellee's boat for some reason fell off the trailer and collided with the ground or roadbed, thereby sustaining damages."

Grady H. King testified substantially as follows:

On or about August 15, 1967, I was returning from Cedar Creek Lake pulling my boat on a trailer with my Chevrolet pickup. I come around a curve and my trailer hit those safety zones, the chains that hold the boat to the trailer broke and that throwed the trailer up on its side and the boat came loose from the trailer. When the trailer hit the safety zone, it broke the chain and the trailer went up on its side and bent the fender and twisted the tongue on the trailer. The trailer just rocked one way and then the other and it looked as though it could go either way. It finally fell back straight. My boat collided with the safety marker on the street and then with the road. I drug the boat about 10 or 12 feet before I could stop. I called the insurance agency that I purchased my policy from the next morning and they informed me I was covered. They told me to get an estimate. I carried my boat to Ace Boat Works and it made an estimate on the damages. These safety zones that I hit were about fifteen inches around. They are also described as safety buttons and stick up about six inches out of the surface of the road.

He was asked, "Were these safety buttons dividing the lanes?" and he replied:

"Yes. It did on this particular part. See, there is a fork there. One road went to Terrell and one to Kaufman and one came to Forney and there's just one row of buttons in the middle of the road."

Johnny H. Schaerdel testified by deposition substantially as follows:

I operate under the name of Ace Boat Service Center. I have been in this business about twenty years. I estimated the damages to Mr. King's boat and motor to be $935.00. He also testified in person and said, in effect, that he failed to find anything wrong with the tongue of the trailer.

Tom Eagleston testified substantially as follows: I am an insurance adjuster and I took a statement from Mr. King in connection with his claim for damages to his boat and motor. The only damage I could see to Mr. King's trailer was the right fender that was bent where the boat had gone over it. I did not notice any damage to the tongue of the trailer.

Mr. McDaniel of the Dunn-McDaniel Insurance Agency testified substantially as follows:

It is not my normal procedure to affirm or deny coverage and claims, but specifically with reference to Mr. King's claim I do not recall telling him whether his boat damage was or was not covered. If Mr. King said he had a conversation with me about coverage and was told that he had coverage, I would say that I do not remember such a conversation.

Mrs. Grady H. King testified substantially as follows:

We were returning from Cedar Creek Lake and were coming down a slight decline on a curve. I noticed a jerk and looked back and saw that the boat had turned over onto the road and off the trailer.

Appellant relies on Birmingham Fire Insurance Company v. Newsom Truck Lines, Inc., 390 S.W.2d 537, (CCA, 1965, Writ Ref. n. r. e. with a Per Curiam opinion agreeing with the Houston court).

We have studied the Court of Civil Appeals' opinion in Newsom Truck Lines,

Inc., 390 S.W.2d 537. On page 540 we find the following:

"In the instant case there was typewritten in the printed Truckmen's Form the words 'OIL FIELD AND/OR CONTRACTOR'S MACHINERY OR EQUIPMENT'. No specific property was described as was done in Groninger & King, supra. In that case the parties knew that houses are necessarily cumbersome objects to transport and quite likely to protrude in all directions from the moving vehicle, so that it would be practically impossible for the truck to collide with anything since more or less protected by the protruding house. The parties contracted for insurance with respect to specific property which was described in the policy. In the present case, however, oil field and/or contractor's machinery or equipment may be large or small, and consist of many things. The parties did not contract with respect to the transportation of any specifically described property which would necessarily or in all probability extend above the top of the truck or beyond the sides or rear thereof."

The court was making a distinction between policies which described the specific property to be insured and those policies involved in the Birmingham Fire Insurance Company case that had described oil field equipment generally. In the instant case, we are dealing with a policy that is designated an outboard motor boat policy and specifically describes a boat and a motor.

It will also be noted on page 539 of the Birmingham Court of Civil Appeals' opinion that the court says that the court in the Groninger & King case relied "upon two cases decided by the Eastland Court of Civil Appeals, with no writ history." The court there reviews the opinions in Continental Ins. Co. v. Griffin, Tex.Civ.App., 218 S.W.2d 350 and Mercury Ins. Co. v. Varner, Tex.Civ.App., 231 S.W.2d 519. It is true that the Griffin case has no writ

history, but the Supreme Court refused a writ of error in Mercury as shown in Vol. 148 Texas Reports, page 642. By refusing a writ, without qualification, the Supreme Court, in effect, made the opinion its own. Thompson v. Gibbs, 150 Tex. 315, 240 S.W. 2d 287, (1951).

In Mercury Insurance Company v. Varner, Tex.Civ.App., 231 S.W.2d 519 (Writ ref.), the court said:

"It has also been held by the courts that where a truck partially tips over, thereby spilling and damaging the contents, there is an 'overturning' of the truck within the terms of the insurance policy. Since the tipping of a truck in such manner as to cause the load or a portion thereof to spill or fall and be damaged is considered an overturn, it is difficult to see why there should be any difference whether the tipping was to one side or the other or to the front or back. The reasoning is that the truck is 'overturned' as that term is used in the insurance policy when sufficiently tipped over to spill its contents."

Appellant's points that the court erred in instructing a verdict because there existed fact issues as to whether there was an overturning of appellee's boat trailer and whether the boat trailer was involved in a collision cannot be sustained. The appellee's testimony was of such a nature as to come within the exception to the interested witness rule. This exception was applied by our Supreme Court in Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, 391 S.W.2d 41, (1965) and by the Court of Civil Appeals in Employers Liability Assur. Corp., v. Groninger & King, 299 S.W.2d 175, (Writ ref. n. r. e.).

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.