[No. 3010–2. Division Two. November 30, 1978.]

The Northwest Insurance Company, *Appellant,* v. Arnold Albrecht, et al, *Respondents.*

*Bradford M. Gierke* and *Johnson, Metzler, Gierke & Curwen,* for appellant.

*Don P. Desonier, Jr., Dennis R. Duggan, Robert D. Mitchelson,* and *Mitchelson & Poyfair,* for respondents.

SOULE, J.—The Northwest Insurance Company, appellant, brought an action against Arnold Albrecht, Groat Bros., Inc. (Groat), and Industrial Indemnity Company (I.I.C.), to resolve two principal questions. The first is whether Northwest Insurance is liable under a motor truck cargo owner and carrier's policy for damage done to a log loader owned by Albrecht, but being transported by Groat. The second is to determine whether I.I.C. covers the loss under its "Contractor's Equipment All Risk" policy and in

consequence is liable to Northwest Insurance for attorney's fees expended in defense of the main action.

This dispute arose when a log loader owned by Albrecht was being transported to a new jobsite by Groat. In the course of the movement, the tractor truck pulling a lowboy trailer upon which the log loader was mounted became unable to proceed. A combination of fresh gravel and a steep grade overcame the tractive ability of the truck. The wheels spun and threw gravel with the result that the drivewheels settled down a few inches into the road surface and the truck was unable to extricate itself. Albrecht employees were accompanying the Groat movement to guide the way to the jobsite. Faced with the emergency, and being loggers, not lawyers, Albrecht and Groat decided to use an Albrecht crawler tractor operated by an Albrecht employee to attempt to extricate Groat's truck. A cable was run to the truck and an effort was made to move forward by the simultaneous application of truck and tractor power. This effort caused the truck and trailer to tip. The weight of the load caused the log loader to break its chains and slide off the trailer with resulting damage to the loader. The truck and trailer, being relieved of the extra weight, did not further upset but returned to an upright position.

Based on this incident, Albrecht sued Groat in Cowlitz County and recovered. Northwest Insurance denied coverage but defended under reservation of rights. Northwest Insurance in turn tendered the defense to I.I.C. which refused the tender.

When that action was resolved in Albrecht's favor, this action to determine coverage resulted. Groat expanded the action by seeking a declaration of coverage against I.I.C. In the present action, the trial court found that the Northwest Insurance policy did provide coverage for the damage sustained by the log loader and further found that the I.I.C. policy did not. Groat has not appealed the denial of I.I.C. coverage.

Northwest Insurance's assignments of error present four issues.

## DID THE TRAILER STRIKE THE ROAD BED?

■ Section 5(b) of the policy excludes coverage for accidents caused by striking the roadbed.[1] Counsel for Northwest Insurance attempted, without success, to extract testimony from the various witnesses which would tend to establish that when the truck wheels spun in, the bottom of the trailer came to rest on the crown of the gravel road. A number of witnesses testified that they did not know whether or not such a condition occurred and this is understandable since their attention was directed elsewhere by the pressure of the events. No one testified that it did happen in the suggested manner. On the contrary, Arnold Albrecht testified that there was 6 to 10 inches clearance between the bottom of the trailer after the unit became immobile. Thus, there was substantial evidence to support the finding that there had been no striking of the roadbed and those findings will not be disturbed on appeal. *Seattle–First Nat'l Bank v. Brommers,* 89 Wn.2d 190, 570 P.2d 1035 (1977); *Rae v. Konopaski,* 2 Wn. App. 92, 467 P.2d 375 (1970).

## DID THE TRUCK AND TRAILER OVERTURN?

Northwest Insurance assigns error to that portion of finding of fact No. 5 which provides in part:

> The same Northwest Insurance Company policy provides at part 5–C, that the company will pay the legal liability of the insured for overturn of the transporting conveyance and the Court finds from the evidence that the transporting vehicle owned by Groat Bros., Inc., had lost its equilibrium at the time of the accident in question, and would have rolled completely over had not the chains holding the cargo broken and therefore, an overturn of the transporting conveyance occurred.

The foregoing finding appears to us to be a mixed finding and conclusion. We find there is substantial evidence to

---

[1] Perhaps this should be considered a ghost issue because the court also found that there was no collision of any sort (finding of fact No. 5) so that the exclusionary clause 5(b) is not applicable in any event.

support the finding portion. Lloyd Groat, the driver of the truck, testified:

Q All right. And now where were you positioned after the Cat had hooked up, when you agreed to move it uphill?

A I got back in the cab, the truck.

Q All right. Can you tell me and tell the Court what you observed and what happened after the Cat began to pull again?

A We began to move, or what seemed to be a movement, and as far as—I can't—I don't know whether it was while we were moving or when the loader started to go off, the truck tipped, or started to tip, to a degree, and I looked back to see what was happening, why it was tipping so much. I thought that I and the truck and the trailer was going to end up in the canyon.

Q All right. And do you know why you didn't go over in the canyon, the truck, trailer and all?

A The chains broke.

Q And had those chains not broken, would the truck have righted itself?

A No.

The legal question presented is whether or not the movement of the truck and trailer in tilting, losing its load and then regaining stability as described by the witness and found by the court, is an overturn within the meaning of the policy.

To support their contention that there was an overturn within the meaning of the policy, respondents cite *Jack v. Standard Marine Ins. Co.,* 33 Wn.2d 265, 205 P.2d 351, 8 A.L.R.2d 1426 (1949). In that case, a loss of equilibrium caused a self-propelled power shovel to fall backward. The front of the tracks lifted, but the counterbalance then came in contact with the ground, thus preventing a complete overturn. In holding that a completed upset was not necessary to constitute an overturn within the meaning of the insurance policy, the court said at page 270:

Once a vehicle loses its equilibrium and the overturning process has commenced and proceeded beyond the power of those in charge of the vehicle to stop its progress, it would be unimportant whether the vehicle turned over

and over, rolling down a hillside, or came to rest on a flat surface in an exactly horizontal position, or came to rest a short distance above the horizontal or at any other angle. It should be held that the vehicle had overturned or upset, within the meaning and intent of such a policy.

In considering the same problem, the court in *Carl Ingalls, Inc. v. Hartford Fire Ins. Co.*, 137 Cal. App. 741, 31 P.2d 414 (1934) at 747 said:

> In ordinary parlance, anything has been overturned when it has been sufficiently tipped over to spill its contents and, in the absence of anything in the policy indicating a different meaning, the ordinary sense of the words used should not "by any nice distinction or artificial refinement" be changed in order to avoid a risk which seems to have been fairly within the contemplation of the policy.

For other authorities holding that the overturn need not be a complete upset, *see Williams v. Niesen*, 261 N.W.2d 401 (N.D. 1977); *Moore v. Western Assurance Co.*, 186 S.C. 260, 195 S.E. 558 (1938) and *Employers Liability Assurance Corp. v. Groninger & King*, 299 S.W.2d 175 (Tex. Civ. App. 1956).

*Old Colony Ins. Co. v. Anderson*, 246 F.2d 102 (10th Cir. 1957) relied upon by the appellant, is distinguishable on two grounds. The first is that the court specifically found that there was no overturning in fact. The damage occurred when the load broke free when rounding a curve, slid off and collided with the ground and a parked vehicle. The occurrence was not caused by an uncontrollable loss of equilibrium of the transporting vehicle. The second is that the court found that there was no collision involving the transporting vehicle. The only collision was between the cargo and the objects with which it came in contact and that absent a collision involving the carrying vehicle, there was no coverage under the policy.

▮ We hold that to constitute an "overturn" within the meaning of the policy, the transporting vehicle need only have lost its equilibrium so that the overturning process has proceeded to a point where it is beyond the power of those in charge of the vehicle to stop its progress. Therefore, the

conclusion of the trial court that the incident constituted an overturn was correct.

## WAS THE EQUIPMENT BEING TRANSPORTED UNDER THE OPERATIVE CONTROL OF GROAT BROS., INC.?

Appellant's policy provides coverage when Groat is acting as a common or private carrier. The complaint in the original action brought by Albrecht alleged that

> On or about October 17, 1974, in Cowlitz County, Washington, the Plaintiff contracted with the Defendants, a common carrier, for the Defendant to transport the Plaintiff's Bucyres Erie, Model 30B, crawler log loader from one location where the Plaintiff was working to another.

Appellant's brief concedes that the employment was undertaken by Groat.[2]

Since Groat's status as a carrier at the time of the damage was a prerequisite to his liability under the contract, the judgment entered in the previous action forecloses his insurer from relitigating that issue in this action. *East v. Fields*, 42 Wn.2d 924, 259 P.2d 639 (1953). *See also* Restatement (Second) of Agency § 107 (1957).

The foregoing should perhaps end our discussion of this point. The question of the status of Groat as a common carrier was not tendered as an issue by the complaint for declaratory judgment. Nevertheless, testimony was adduced in this area, argument was made by Northwest Insurance on the subject of control as it affected Groat's status, the subject was addressed by the court's oral opinion, and, notwithstanding that it was unnecessary in view of the prior litigation, it was made the subject of a finding of fact presented by the attorney for Groat.[3]

---

[2] "The Respondent Groat Bros., Inc. was hired by the Respondent Albrecht to transport Albrecht's Crawler Log Loader."

[3] That the overturn of the Groat Bros., Inc., vehicle occurred on or about October 17, 1974, while Groat Bros., Inc., was acting as a common carrier and transporting equipment owned by Arnold Albrecht d/b/a Albrecht Logging Company.

We address ourselves to the matter only so that there may be no doubt that, quite apart from the technicalities of the situation, the issue of the continuing status of Groat as a common carrier has been properly resolved against the appellant.

On cross–examination, Lloyd Groat was asked:

Q . . . Did you consider the job to be over at that point in time?

A No.

Q You considered your contract obligation to get to the loading point?

A To where we were—where the destination point was, yes.

There is testimony that the parties were mutually working to accomplish the completion of the carriage contract but there is no testimony even remotely suggesting that Lloyd Groat, acting on behalf of Groat Bros., Inc., had ever relinquished control of the operation or abandoned his contract obligation. Appellant cites no authority for the proposition that merely because the owner assists the carrier in its emergency, that the carrier is relieved of its contractual obligation to deliver the goods safely or that the owner participation at the request of or with the consent of the carrier diminishes in any way the carrier's responsibility.

■ In view of Groat's recognition that the contract had not yet been completed, he clearly retained control and the power to direct Albrecht, or if he chose, to refuse to let Albrecht assist in any way and we so hold.

### I.I.C. COVERAGE

The I.I.C. policy is entitled "Contractor's Equipment All Risk Form." Section 1a provides:

PROPERTY COVERED. This policy covers contractor's equipment as described in the schedule attached, the property of the Insured *or the property of others for which the Insured may be liable, for not exceeding the amount or amounts specified in respect to each of the items described.*

(Italics ours.) Section 3 provides:

THIS POLICY INSURES AGAINST:
All risks of direct physical loss or damage from any external cause *to the insured property* except as hereinafter provided.

(Italics ours.)

The question presented is whether the log loader was covered. We hold that it was not.

The very title of the instrument, "Contractor's Equipment All Risk Form," plainly is in the possessive. It is equipment of the contractor which is insured. In its brief, Northwest Insurance by elision modifies the title to "Contractors' All Risk"[4] coverage, overlooking the fact that at least in the title, it is risk to the contractor's *equipment* that is the subject of the instrument, not the contractor's public liability.

Appellant also glosses over the fact that before coverage is afforded, the items with specified amounts of coverage must be listed on the policy schedule, and that only two items are so listed, a 1968 John Deere Crawler for $8,000 and a 1965 Scoopmobile loader for $6,000.

Northwest Insurance urges that coverage attached because of the phrase in section 1a, "the property of others for which the Insured may be liable," and that this phrase is ambiguous. This is merely a parenthetical or apposite phrase which permits coverage regardless of who owns the described property. *Cf. St. Paul Fire & Marine Ins. Co. v. Murray Plumbing & Heating Corp.,* 65 Cal. App. 3d 66, 135 Cal. Rptr. 120 (1976).

In making its argument, appellant tears the words from their context. The sentence relied upon concludes with the language, "for not exceeding the amount or amounts specified in respect to each of the items described." Even if the provisions of the policy would otherwise provide coverage, lack of description of the item and amount precludes it.

---

[4]Appellant's brief, 13–15.

In any event, it is clear to us that the coverage is basically property damage coverage for contractor's equipment that is described in the attached schedule and either owned by the insured or the property of others for which the contractor may be liable by reason of a rental, leasing, or borrowing agreement between the contractor and another. It is not intended to be a cargo liability policy, particularly for cargo being carried by a truck and trailer which are themselves excluded from the coverage by section 2 of the policy.

There being no coverage for Groat under the I.I.C. policy for this loss, Northwest Insurance is not entitled to pro rata indemnification for costs of defense.

### ATTORNEY'S FEES

Groat asks that Northwest Insurance be assessed attorney's fees for his expenses on appeal on the ground that this appeal has been taken for the purpose of delay only, citing *Harvey v. Unger*, 13 Wn. App. 44, 533 P.2d 403 (1975).

We have examined the record in this case. We conclude that the issue concerning collision with the roadbed is totally without merit and the issue relating to control was foreclosed by the previous litigation. Both of these issues could be said to have been appealed for delay only. However, the issue on what legally constitutes an overturn merited appellate consideration and, contrary to the assertion in Groat's brief, the question of coverage by I.I.C. appears to have been sufficiently raised by paragraph 6 of appellant's complaint for declaratory judgment. Therefore, we cannot say that the appeal was taken only for the purposes of delay.

There is another consideration. The appellate rules embodied in CAROA have been replaced by the Rules of Appellate Procedure. RAP 5.5(c), which was in effect before this case was appealed, requires a civil appeals statement. RAP 5.5(d) requires an answer to that statement which should present any new or modified issue. Groat did not file

such an answer. Had he done so and raised the issue of whether or not the appeal was taken for delay, the appropriateness of scheduling this case for a settlement conference would have been readily apparent. RAP 5.5(i) authorizes the court to impose sanctions for failure to follow the rule and we believe it appropriate to note that were it necessary to do so to dispose of this issue, we would be justified in refusing to consider the matter of attorney's fees on appeal where that application is made for the first time in the respondent's brief, rather than in the answer to the civil appeals statement.

The judgment of the trial court is affirmed.

PEARSON, C.J., and PETRIE, J., concur.